**Elton E. DOTSON and Alrethia Dotson, Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 95–40289.

United States Court of Appeals, Fifth Circuit.

June 27, 1996.

Stephen L. Hester, Washington, DC, K. Peter Schmidt, Arnold & Porter, Washington, DC, Roslyn M. Litman, Litman, Litman, Harris and Brown, Pittsburg, PA, John G. Jacobs, Plotkin and Jacobs, Chicago, IL, for Plaintiffs–Appellants.

Gregory Scott Garland, Dallas, TX, Michael D. Powell, U.S. Department of Justice, Tax Division, Dallas, TX, Kenneth W. Rosenberg, Gary R. Allen, U.S. Department of Justice, Tax Division, Appellate Section, Washington, DC, for Defendant–Appellee.

Before: GARWOOD, SMITH and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

The Dotsons brought this action seeking a refund from income and wage taxes paid on a class action settlement award. They appeal the denial of their motion for summary judgment and the grant of the United States' cross-motion for summary judgment. The district court held that damages received pursuant to § 502(a) and § 510 of the Employee Retirement Income Security Act (29 U.S.C. § 1132(a) and § 1140) do not meet the "personal injury" exclusion from income under § 104(a)(2) of the Internal Revenue Code (26 U.S.C. § 104(a)(2)). While the Special Master and the parties to the 1990 settlement clearly intended a tort-like compensatory remedy, which appeared to be available under reasonable interpretations of extant jurisprudence, later judicial decisions interpreting ERISA have cast doubt on the availability of such excludable compensatory remedies. This appeal raises the question of whether subsequent legal decisions more narrowly interpreting the availability of personal injury damages as statutory remedies affect the classification for tax purposes of a good faith, arm's length settlement based upon the reasonable potential for recovery of such damages under the then extant jurisprudence. The district court held that they do. We reverse.

The case arises out of a settlement made in a consolidated class action lawsuit brought against Continental Can Company (Continental). Two separate classes of plaintiffs brought actions against Continental for violation of § 510 of ERISA, which makes provides that:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employe benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan ...

29 U.S.C. § 1140. Plaintiffs claimed that defendants, through the implementation of a nation-wide scheme to avoid pension liabilities, prevented them from obtaining benefits under the pension plan in violation of § 510.

*Gavalik v. Continental Can Co.*, 812 F.2d 834, 838 (3rd Cir.), *cert. denied*, 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987); *see also*, *McLendon v. Continental Group, Inc.*, 749 F.Supp. 582, 583 (D.N.J.1989). After two bifurcated trials, Continental was found liable for violating § 510. *See Gavalik, supra* (reversing trial court judgment for Continental); *McLendon, supra.*

In order to litigate the remaining issue of damages, the *Gavalik* case was consolidated with the second case under the name *McLendon*. *McLendon v. Continental Group, Inc.*, 802 F.Supp. 1216 (D.N.J.1992). The New Jersey district court appointed Yale Law Professor George Priest as Special Master in order to help the court fashion an appropriate remedy.

In December of 1990 the parties settled for $415 million to be distributed to the consolidated class by the Special Master. The court approved the settlement and Professor Priest's Plan for Distribution. The Dotsons received $89,754, of which $19,877 went directly to a qualified pension fund. Of the remaining $64,872.35, $15,361.93 was withheld for income taxes, and $4,381.65 was withheld for FICA. The Dotsons filed an amended income tax return in December of 1993 which excluded the $64,872.35 from wages. They seek the resulting refund of $19,485 from income taxes, and a $1,107.65 from FICA taxes for the year 1992. After the IRS denied these claims, the Dotsons brought this action in the federal district court for the Southern District of Texas. The parties filed cross-motions for summary judgment. The district court granted the government's motion, and the Dotsons filed this appeal.

## I.

We review summary judgment rulings de novo. *Wesson v. United States*, 48 F.3d 894, 896 (5th Cir.1995).

Section 61(a) of the Internal Revenue Code defines gross income broadly as "all income from whatever source derived" not expressly excluded by the Code. 26 U.S.C. § 61(a). Courts give effect to that broad definition by interpreting the statutory exclusions from

gross income narrowly. *U.S. v. Burke,* 504 U.S. 229, 233, 112 S.Ct. 1867, 1870, 119 L.Ed.2d 34 (1992).

The appellants claim that their ERISA settlement meets the exception for personal injury compensation. Section 104(a)(2) of the Code excludes "the amount of any damages received (whether by suit or agreement and whether as lump sums or periodic payments) on account of personal injuries or sickness." The Code itself does not define the term "damages received ... on account of personal injuries," but Treasury Regulation 26 CFR § 1.104–1(c) (1994) states that it "means an amount received (other than workers' compensation) through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution." The Supreme Court has held that this Regulation links the definition of personal injury compensation with the requirement of a tort or tort-like suit. *U.S. v. Burke, supra.*

Congress first enacted the personal injury compensation exclusion in 1918 at a time when such payments were considered the return of human capital, and thus not constitutionally taxable "income" under the 16th amendment. See H.R.Rep. No. 767, 65th Cong., 2nd Sess. 9–10 (1918). The concept of a return of human capital lost through injury continues to support the exclusion. *Commissioner v. Miller,* 914 F.2d 586, 590 (4th Cir. 1990), 1 B. Bittker, Federal Taxation of Income, Estates and Gifts, para. 13.1.4 (1981). The recipient of personal injury damages is in effect forced to sell some part of her physical or emotional well-being in return for money.[1]

The return of human capital theory does not serve to explain, however, why § 104(a)(2) exclusion also applies to back wages received as part of a personal injury award, Rev.Rul. 85–97, 1985–2 C.B. 50. and *U.S. v. Burke, supra.* These wages would ordinarily be taxable when received. Courts and commentators speculate that Congress'

purpose in maintaining the § 104(a)(2) exclusion can perhaps best be explained as "intended to relieve a taxpayer who has the misfortune to become ill or injured." *Epmeier v. U.S.,* 199 F.2d 508, 511 (7th Cir.1952). See also Bertram Harnett, *Tort and Taxes,* 27 N.Y.U.L.Rev. 614, 627 (1952); Laurie Malman, Lewis Solomon, Jerome Hesch, Federal Income Taxation 102–3 (1994).

■ The Supreme Court has recently decided two cases on the application of § 104(a)(2) to different anti-discrimination statutes, *Commissioner of Internal Revenue v. Schleier,* —— U.S. ——, 115 S.Ct. 2159, 132 L.Ed.2d 294 (1995) and *U.S. v. Burke, supra.* The Court clarified the requirements of § 104(a)(2) exclusion: damages received must be both "on account of personal injury" and stem from a "tort or tort-like" claim. *Schleier, supra* at ——, 115 S.Ct. at 2166. The first requirement tests whether the damages received were due to a personal injury rather than mere economic loss. The second examines the legal basis of the claim for tort-like characteristics, focusing on the scope of remedies available under the statutory scheme. *Id.*

## II.

■ The district court concluded that Mr. Dotson failed the requirement that damages be recovered for a tort-like claim. The civil enforcement clause of ERISA, § 502(a) (29 U.S.C. § 1132(a)), gives beneficiaries the right to bring civil suits to recover benefits or "(A) to enjoin any act or practice which violates any provision of this subchapter, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." The district court acknowledged that the parties and the Special Master interpreted the law governing ERISA at the time of the settlement to allow for extra-contractual damages.

---

1. *But see,* Robert Ellwood. *Supreme Court's Ruling on Taxation of Discrimination Damages Provides Little Resolution.* 83 J.Tax'n 148, n. 3 (1995). ("The 'human capital' theory raises a thorny—and ultimately rather ludicrous problem: When would the recovery exceed the injured party's 'basis,' and could such basis increase?") There probably exists no reasonable way for the Code to tax "profits" made from the return of human capital.

The record in this case is absolutely clear that Special Master Priest unequivocally *thought* that the settlement award included significant "tort-like" elements. Indeed, there is evidence that a settlement was reached in the underlying class action only because the Defendants in that case feared that they would be liable for punitive damages if they failed to settle.

Applying hindsight, the district court instead relied on cases decided after the settlement which interpret the statute to limit the remedies available under ERISA. *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 262, 113 S.Ct. 2063, 2072, 124 L.Ed.2d 161, 174 (1993); *Medina v. Anthem Life Insurance Co.,* 983 F.2d 29, 32 (5th Cir.) *cert. denied,* 510 U.S. 816, 114 S.Ct. 66, 126 L.Ed.2d 35 (1993). As a result of these later cases, the district court concluded, the statutory remedy is not tort-like as defined by the Supreme Court in *Burke.*

The appellants argue that the district court should have focused on the court decisions interpreting ERISA available to the parties at the time of the settlement. Shortly before the parties settled, the Supreme Court handed down a decision in *Ingersoll–Rand v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), containing dicta which led the Special Master to conclude that compensatory damages were available under § 502(a) for a violation of § 510. *Ingersoll–Rand* held that a state court suit for compensatory and punitive damages was preempted by ERISA. In her opinion for the Court, Justice O'Connor wrote "there is no basis in § 502(a)'s language for limiting ERISA actions to only those which seek 'pension benefits.' It is clear that the relief requested here [for a § 510 violation] is well within the power of the federal courts to provide. Consequently, it is of no answer to a pre-emption argument that a particular plaintiff is not seeking recovery of pension benefits." *Id.* at 145, 111 S.Ct. at 486. Continental accepted the Special Master's interpretation of *Ingersoll–Rand* as controlling and agreed to a settlement based on the plaintiff's compensatory damages claims.

The district court both cited post-settlement cases limiting the availability of ERISA

compensatory damages, and disputed the Special Master's and the appellants' interpretation of the law at the time of the settlement in light of later cases. While conceding that other courts had interpreted *Ingersoll* as the Special Master and the parties did, the district court did not look to reasonable interpretation of the law available at the time but to what he considered to be the actual intent of the Supreme Court in *Ingersoll* as shown by later cases. The Supreme Court ignored or avoided comment on O'Connor's *Ingersoll* dicta in its decision in *Mertens, supra.* The district court took this to mean that the Court never intended in *Ingersoll* to allow the expansive reading of ERISA's remedies that the Plaintiffs urged the district court to adopt.

■ The district court misconceives the tort-like claims requirement for exclusion. The characterization of damages received is not affected by the shifting sands of statutory interpretation after a bona fide settlement has been reached or a damage award rendered. Neither is it determined by the alleged unspoken intent of the Supreme Court Justices who voted in *Ingersoll.* The characterization of the settlement depends upon the determination that the damages were received "through prosecution of a legal suit or action based upon tort or tort-type rights ...." Treasury Reg. 26 C.F.R. 1.104–1(c). The fact that such a remedy may no longer exist is irrelevant to the determination of the character of a settlement to be taxed.

Although the Supreme Court's decision in *Mertens* may retroactively apply to pending ERISA cases, this case is not an ERISA case. It is an income tax case involving the tax treatment of a final settlement of a claim for damages under ERISA that was concluded before the issue of first impression decided by the sharply divided *Mertens* court was even clearly foreshadowed. Consequently, *Mertens* does not change the classification of the instant settlement for *tax* purposes any more than it could retroactively reduce the amount of the settlement which the parties

made based on their now perhaps outmoded interpretation of ERISA law.[2]

The Supreme Court's decisions in *Burke* and *Schleier* are distinguishable in that they did not have to contend with settlements based upon unsettled statutory remedies, thus allowing the Court to focus exclusively on the statutes in question in those cases. The Dotsons' ERISA class action suit is one step removed; judicial interpretations of the statute indicated the potential availability of compensatory damages to the plaintiffs. The post-settlement judicial clarification of remedies available under ERISA does not change the fact that the taxpayer prosecuted and actually received a settlement which compensated tort type personal injuries. The argument that the current interpretation of ERISA would prevent Dotson from receiving his compensatory damages today certainly does not transform his settlement of a claim for potential compensation of actual damages into a windfall.

The Tax Court held in *Threlkeld v. Commissioner*, 87 T.C. 1294, 1306, 1986 WL 22061 (1986), *aff'd*, 848 F.2d 81 (6th Cir.1988), a case cited with approval by the Supreme Court in *Schleier*, that an examination of the state law under which the taxpayer recovered:

> may be of limited assistance where, in a settlement, the claim is itself unclear. Similarly, State law is of little help where there are several claims, only some of which are for personal injuries. The State law classification of the various claims will be of no assistance identifying the claim or claims or in carving up the damage recovery.

The Supreme Court's focus on statutory schemes in *Burke* and *Schleier* does not necessitate the post-hoc recharacterization of a settlement based upon a formerly more promising interpretation of the availability of compensatory remedies.

The purposes of § 104(a)(2) of the Internal Revenue Code would not be served by such a formulaic characterization of remedies. Congress' sympathy for the victims of personal injuries, underlying that statute's enactment, surely was not contingent on the fate of future interpretations of the particular statutes under which they might recover. Neither will our decision always favor taxpayers. Surely the government would oppose the retroactive application of a new, more generous interpretation of the remedies available under a statute in order to expand tax exclusions. The interests of both taxpayers and the government in finality and predictability of taxation strongly support classifying legal judgments or settlements according to the understanding of the law at the time of the settlement.

In a similar case, *Redfield v. Insurance Co. of North America*, 940 F.2d 542 (9th Cir. 1991) (overruled on other grounds by *Schleier, supra* ), the Ninth Circuit characterized a damages award for § 104(a)(2) tax purposes. The taxpayer received, among other damages, an award for breach of an implied covenant of good faith and fair dealing. The California Supreme Court later ruled that such tort damages were not available. The Ninth Circuit held that the later case "cannot retroactively alter the character of damages already awarded Redfield and affirmed on appeal." *Id.* at 548, n. 2.

■ *Redfield* involved a court award, rather than a court approved settlement, but there is no more reason to retroactively recharacterize good-faith, arm's length settlements than court judgments. Settlements do offer an opportunity for parties to benefit at the expense of the government by describing the damages as excludable. Because of this, the characterization of a settlement cannot depend entirely on the intent of the parties. *Threlkeld* held that when the legal classification of settlements is unclear, "we must look

---

**2.** It is difficult to understand why the district court and the dissent in the present case choose to apply *Medina v. Anthem Life Insurance Co.*, 983 F.2d 29, 32 (5th Cir.) *cert. denied,* 510 U.S. 816, 114 S.Ct. 66, 126 L.Ed.2d 35 (1993), a post-settlement Fifth Circuit precedent for the purposes of taxing a settlement of litigation which arose and was concluded previously in the Third Circuit. The question of which circuit's interpretation of ERISA should apply is only one of the complicated issues that courts would unearth by engaging in the redundant process of retroactively classifying good faith settlements for tax purposes.

to various factors, including the allegations in the State court pleadings, the evidence adduced at trial, a written settlement agreement, and the intent of the payer." This additional evidence of the nature of settlement helps to insure the good faith of the taxpayer/party. Just as courts must engage in this evidentiary inquiry when they determine the allocation of settlement damages to various possible claims, they must also characterize the claims the parties, in good faith, intended to settle for.[3]

In this case, the Special Master held hearings for the district court on the issue of damages. Continental Can fought the introduction of evidence of nonpecuniary losses, arguing that ERISA allowed only equitable remedies. The Special Master admitted the evidence, citing *Ingersoll–Rand* in his ruling that compensatory damages were allowable.[4] Soon after, the parties settled the case, spurred by the defendants' fear of punitive damages. The Special Master developed a Plan of Distribution for the settlement, described by the court below as "the double remedy of a 'Basic Award,' which included compensation for dignitary injuries, and an 'Earnings Impairment Additur' which compensated lost earnings capacity."

The Special Master described the Basic Award as

> meant to compensate for the dignitary loss suffered by the alleged discrimination on grounds of age and work experience as employees approached the Continental pension benefit thresholds. Admittedly, this is a crude proxy for those elements of non-pecuniary loss suffered by class members, especially mental anguish and emotional distress.

He characterized the Earnings Impairment Additur as

> not measured solely by the difference in earnings before and after Continental employment, but attempts to approximate—again, crudely—the long-term loss in employment prospects that faced most Continental employees whose skills and opportunities were diminished for their lifetimes.

The Dotsons' award was structured with the heavy involvement of an officer of the court, the Special Master. The district court approved the amount of the settlement and the plan for distribution. And the defendants, after what the government concedes was an arm's-length, adversarial court battle with the plaintiff class, decided to settle for amounts exceeding mere contractual damages.

The remedies envisioned by the settlement represent exactly the type of "broad range of damages to compensate" which *Burke* associated with traditional tort claims. "Although these damages are described in compensatory terms, in many cases they are larger than the amount necessary to reimburse actual monetary loss sustained or even anticipated by the plaintiff, and thus address intangible elements of injury." *Burke,* supra at 235, 112 S.Ct. at 1871. Mr. Dotson, who suffered little wage interruption and took a higher paying new job, received the type of traditional tort remedies described by the Supreme Court in *Burke.* The settlement compensated for dignitary injuries, emotional distress, and other non-pecuniary loss, all of which exceed mere contractual damages. As such it fulfills the tort-like damages requirement for excludability under § 104(a)(2).

---

**3.** Judicial inquiry into the motives of taxpayers and those from whom they receive income is not unprecedented in the Tax Code. The exclusion of gifts from federal income taxation requires an inquiry into the motive of the donor to distinguish gifts from wages or business transactions. *Commissioner v. Duberstein,* 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960). When the remedies available under the law are unclear at the time of a settlement, as in the instant case, the true nature of the settlement will also include some degree of inquiry into motive of the parties.

**4.** While the government now disputes the validity of the *McLendon* parties' reliance on *Ingersoll,* the Solicitor General agreed with the appellant's position in an amicus brief submitted to the Supreme Court in *Mertens.* The government there cited *Ingersoll* for the proposition that ERISA's § 502(a) allows broad compensatory relief. Brief for the United States as Amicus Curiae Supporting Petitioners, *Mertens,* 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993).

## III.

■ In order to reverse the district court's grant of summary judgment to the government, we must ensure that the settlement fits the other requirement for § 104(a)(2) exclusion, that the damages received be "on account of personal injury." 26 U.S.C. § 104(a)(2).

In the recent case of *Commissioner v. Schleier*, 515 U.S. ——, 115 S.Ct. 2159, 132 L.Ed.2d 294 (1995), the Supreme Court characterized as taxable a settlement made under the Age Discrimination in Employment Act (ADEA) because it was not "on account of personal injury." The ADEA provides the remedies of back wages and liquidated damages for age discriminatory terminations. The Court found that the back wages award, while normally excludable if part of general personal injury damages, did not stem directly from the injury in this case. The discrimination against the taxpayer caused him both to be fired and to suffer personal injuries of lost reputation and emotional damages, but the injuries did not cause the firing. The majority contrasted this situation to the example given by the Tax Court in *Threlkeld, supra*, in which a surgeon suffers a physical injury which imperils his future earning capacity. The surgeon's injuries cause him to lose wages, but Mr. Schleier's lost wages, the court argued, are not "on account of personal injury."

In the instant case, the portion of the damages designed to compensate for dignitary injuries and nonpecuniary loss are certainly "on account of personal injury." The discriminatory firing caused employees to "[suffer] the stress, the stigma and the self doubt that comes with losing a well-paid job," as described by the Special Master. These are the types of "traditional harms associated with personal injury" the Court recognized in *Schleier*, at ——, 115 S.Ct. at 2167 (internal quotations omitted) as excludable.

The *Schleier* case, however, mandates different treatment of back wages received pursuant to a discriminatory firing case. Mr. Dotson received a Basic Award, which contained some measure of back wages, and an Earnings Impairment Additur, which compensated for lost earnings capacity. We can find no way of distinguishing the reasoning in *Schleier* from the back wages in the case before us. The anti-discrimination provision of § 510 of ERISA similarly provided compensation in this case for both a firing and personal injuries. The personal injuries themselves, as the Supreme Court distinguishes them, did not give rise to the loss of wages. We therefore remand the case so that the district court may determine the amount of back wages included in the Basic Award.

The Earnings Impairment Additur compensated to some extent for future lost wages. On remand, the district court should determine the degree to which the award represented lost wages for Mr. Dotson, since the record shows that he actually saw an increase in earnings at his next job. Once the district court distinguishes future lost wages from other potential parts of the Earnings Impairment Additur, it must also determine the nature of that award, and the degree to which the award envisioned earnings impairment as a result of the firing, and thus taxable, or, instead, "on account of personal injuries" such as emotional damage or loss of reputation. Any part of the future lost wages attributable to causation by personal injury is excludable.

## IV.

The Dotsons also appeal the district court's grant of summary judgment affirming the withholding of wage taxes, pursuant to the Federal Insurance Contributions Act (FICA) and the Federal Unemployment Tax Act (FUTA).

■ The portion of the settlement determined to be excludable from taxable income on remand to the district court should also be excludable from wage taxes. Damages not included in the tax code's definition of "income" are not considered "wages." *Rowan Cos., Inc. v. U.S.*, 452 U.S. 247, 254, 101 S.Ct. 2288, 2293, 68 L.Ed.2d 814 (1981). As such they are not taxable under FICA. *Redfield, supra* at 548, *Anderson v. U.S.*, 929 F.2d 648, 654 (Fed.Cir.1991). Neither are they taxable under FUTA, since FICA and FUTA use the

same definition of wages. Code §§ 3121(a) and 3306(b).

■ Even if the district court determines that some portion of the Employment Impairment Additur award is taxable, it still does not constitute "remuneration for employment" subject to wages taxation. I.R.C. §§ 3101, 3111, 3121(a), 3306(b). The EIA compensated for "loss in earning capacity," not for services already performed, and is thus not subject to wage taxation. *Eirhart v. Libbey–Owens–Ford Co.*, Nos. 76–C–3182, 78–C–2042, 1991 WL 211235 at 2 (N.D.Ill. 1991), aff'd, 996 F.2d 837 (7th Cir.1993), and *Slotta v. Texas A & M University System*, No. 6–93–92 at 1 (S.D.Tex. August 10, 1994) ("a dismissal payment is not subject to withholding if it cannot be fairly classified as renumeration for services performed.")

We vacate the judgment of the district court and remand for proceedings consistent with this opinion.

JERRY E. SMITH, Circuit Judge, concurring in part and dissenting in part:

I.

The majority attempts to distinguish three controlling Supreme Court precedents by declining to give retroactive effect to one of them, in violation of that Court's retroactivity jurisprudence, and by then looking to a policy concern that contravenes an intricate and carefully-considered congressional enactment. Finding neither rationale persuasive, I respectfully dissent from parts II and III of the majority opinion.

The Supreme Court recently held as follows:

> [There are] two independent requirements that a taxpayer must meet before a recovery may be excluded under § 104(a)(2). First, the taxpayer must demonstrate that *the underlying cause of action giving rise to the recovery* is "based upon tort or tort type rights"; and second, the taxpayer must show that the damages were received

"on account of personal injuries or sickness."[1]

Thus, even though the conduct giving rise to Dotson's recovery caused him personal injury, and *though the parties to McLendon v. Continental Group, Inc.*, 802 F.Supp. 1216 (D.N.J.1992), intended that the settlement would compensate for that injury, Dotson may deduct his recovery only if his cause of action—the Employee Retirement Income Security Act of 1974 ("ERISA")—is "based upon tort or tort type rights." *See Schleier*, —— U.S. at —— n. 6, 115 S.Ct. at 2165 n. 6; *United States v. Burke*, 504 U.S. 229, 238, 112 S.Ct. 1867, 1872–73, 119 L.Ed.2d 34 (1992).

A cause of action is based upon tort or tort-type rights only if it creates a remedy for a personal injury. *See Schleier*, —— U.S. at —— – ——, 115 S.Ct. at 2166–67; *Burke*, 504 U.S. at 237 n. 7, 241, 112 S.Ct. at 1872 n. 7, 1874. Specifically, it must provide for recovery of compensatory or punitive damages. A claim that permits only equitable relief for "injuries of an economic character" does not pass this test. *See Burke*, 504 U.S. at 238–39, 241, 112 S.Ct. at 1872–73, 1874; *Schleier*, —— U.S. at —— – ——, 115 S.Ct. at 2166–67.

ERISA's civil enforcement provision, ERISA § 502(a), 29 U.S.C. § 1132(a) (1994), does not permit recovery of compensatory or punitive damages. *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993); *Medina v. Anthem Life Ins. Co.*, 983 F.2d 29, 32 (5th Cir.), *cert. denied*, 510 U.S. 816, 114 S.Ct. 66, 126 L.Ed.2d 35 (1993). "Without explicit instructions from Congress, we are bound to the plain language of the statute that limits suits to the terms of the plan at issue." *Medina*, 983 F.2d at 32. The Supreme Court arguably interpreted § 502(a) in a more liberal fashion in *Varity Corp. v. Howe*, —— U.S. ——, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), but it did not overrule *Mertens*. *See id.* at ——, 116 S.Ct. at 1076.

---

1. *Commissioner v. Schleier*, —— U.S. ——, ——, 115 S.Ct. 2159, 2167, 132 L.Ed.2d 294 (1995) (emphasis added); *see also Wesson v. United States*, 48 F.3d 894, 897 (5th Cir.1995) (stating that "the threshold inquiry ... is to determine if *the underlying cause of action* seeks to redress a personal injury") (emphasis added).

Dotson argues that *Mertens* and *Medina* are distinguishable because his underlying claims arose under ERISA § 510, 29 U.S.C. § 1140 (1994). Section 510 provides the substance of Dotson's underlying claims, but § 502(a) determines the available remedies. As *Mertens* and *Medina* define the scope of remedies permitted by § 502(a), they are on point.

Finally, Dotson asserts that we should characterize the settlement according to his allegations in *McLendon*, not in light of subsequent legal developments. This contention is irrelevant.

As explained above, there are two requirements for a § 104(a)(2) exclusion. The first asks whether the underlying *cause of action* redresses personal injury; the second looks to whether the *settlement* compensates for such an injury. *See, e.g., Wesson*, 48 F.3d at 897, 899. In short, the first test requires a legal classification, the second a factual characterization.

Dotson is correct that *Mertens* and *Medina* do not affect the factual determination of whether the *settlement* actually compensated for personal injury, but he cannot avoid the fact that those cases classify his *cause of action* as one that does not redress personal injury. As "[a] judicial construction of a statute is an authoritative statement of what the statute meant *before as well as after* the decision of the case giving rise to that construction," *Rivers v. Roadway Express*, 511 U.S. 298, ——, 114 S.Ct. 1510, 1519, 128 L.Ed.2d 274 (1994) (emphasis added), *Mertens* and *Medina* control.

As ERISA does not permit recovery of compensatory or punitive damages, it does not redress personal injuries. *Cf. Mertens*,

508 U.S. at 255, 113 S.Ct. at 2067–68 (analogizing ERISA to title VII, which, the Court found in *Burke*, does not redress tort-type rights). Thus, Dotson has not met the threshold requirement for a § 104(a)(2) exclusion.

## II.

### A.

The majority opinion is subject to two interpretations. First, it could be read to hold that ERISA provided tort-type remedies at the time of the *McLendon* settlement. Second, it could be interpreted to enunciate an exception to *Schleier, Burke*, and *Wesson* for cases in which the law was unsettled at the time of a judgment or settlement. Neither rationale is tenable.

I read the majority opinion to find that ERISA provided tort-type remedies at the time of the *McLendon* settlement, even though those remedies "no longer exist," having been buried in "the shifting sands of statutory interpretation." *See* op. at 4393. As the Supreme Court recently reminded us, "[a] judicial construction of a statute is an authoritative statement of what the statute meant *before as well as after* the decision of the case giving rise to that construction." *Rivers*, 511 U.S. at ——, 114 S.Ct. at 1519 (emphasis added).

Moreover, as the Supreme Court is the authoritative interpreter of federal law, earlier lower-court opinions reaching a different conclusion are "wrong." *Id.*[2] Thus, *Mertens* holds that ERISA *never* provided compensatory remedies, and lower courts were in error to believe otherwise.[3]

The majority attempts to distinguish *Rivers* by asserting that "[a]lthough ... *Mertens* may retroactively apply to pending ERISA

---

**2.** This fundamental principle of adjudication does not rest on the formalist belief that judges do not "make" law. Instead, "the rules that necessarily govern our hierarchical federal court system" dictate that the Supreme Court's interpretation of a statute is correct, and all other readings are wrong. *Rivers*, 511 U.S. at ——, 114 S.Ct. at 1519.

**3.** The majority observes that a "complicated issue[]" would arise if a taxpayer settled a case in light of the settled law of one circuit and later

litigated his right to an exclusion in a different circuit. *See* op. at 4394 n. 2. That scenario would occur only in rare instances where (1) circuits split on the liability issue, (2) the taxpayer settled his claim, *and* (3) the taxpayer either (a) chose not to litigate in his home state or (b) participated in a multi-state class action.

This case does not present such a circumstance. Whether the Third Circuit would have reached the same result as we did in *Medina* is irrelevant, as the Supreme Court settled the question in *Mertens*. In any event, few legal

cases, this case is not an ERISA case." Op. at 4394. The publisher's decision to give *Mertens* a "pensions" headnote and this case an "internal revenue" one hardly restricts *Mertens*'s precedential value. In fact, the Supreme Court recently prohibited "the erection of selective temporal barriers to the application of federal law" in *all* cases:

> When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in *all* cases still open on direct review and as to *all* events, regardless of whether such events predate or postdate our announcement of the rule.

*Harper v. Virginia Dep't of Taxation,* 509 U.S. 86, 97, 113 S.Ct. 2510, 2517, 125 L.Ed.2d 74 (1993) (emphasis added).

Finally, the majority asserts that retroactive application of *Mertens* and *Medina* would be inequitable. *See* op. at 4394. While federal courts formerly considered whether retroactive application of a precedent would cause inequity in the individual case, the Supreme Court recently overruled that test, *see Harper,* 509 U.S. at 94–95 & n. 9, 113 S.Ct. at 2515–17 & n. 9, explaining that "we can scarcely permit the substantive law [to] shift and spring according to the particular equities of [individual parties'] claims of actual reliance on an old rule and of harm from a retroactive application of the new rule." *Id.* at 97, 113 S.Ct. at 2517 (quoting *James B. Beam Distilling Co. v. Georgia,* 501 U.S. 529, 543–44, 111 S.Ct. 2439, 2447–48, 115 L.Ed.2d 481 (1991) (opinion of Souter, J.)) (internal quotations omitted).[4]

Of course, retroactivity doctrine yields to the finality of judgments and therefore applies only to pending cases. *See James B.*

*Beam,* 501 U.S. at 541, 111 S.Ct. at 2446–47 (opinion of Souter, J.). If the parties to *McLendon* had actually litigated the question of whether ERISA entitled the plaintiff class to recover compensatory or punitive damages, the ensuing judgment *might* control our decision of that question. Dotson cannot assert collateral estoppel, however, because the district court did not actually and necessarily decide the remedies question when it approved the class action settlement, *see EEOC v. American Airlines,* 48 F.3d 164, 167 (5th Cir.1995); nor can Dotson assert res judicata, as the Commissioner was not a party to *McLendon, see Travelers Ins. Co. v. St. Jude Hosp.,* 37 F.3d 193, 195 (5th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1696, 131 L.Ed.2d 559 (1995).

In reality, this case does not implicate the principle of retroactivity. "It is only when the law changes in some respect that an assertion of nonretroactivity may be entertained." *James B. Beam,* 501 U.S. at 534, 111 S.Ct. at 2443 (opinion of Souter, J.). Neither the Supreme Court, nor the Third Circuit (in which the parties settled *McLendon* ), nor this circuit has ever held that ERISA permits the recovery of compensatory or punitive damages. The controlling law never changed; the parties to *McLendon* simply read it incorrectly. To the extent that it declines to apply controlling precedent, the majority opinion is simply in error.

### B.

### 1.

By focusing on the nature of the settlement rather than of the underlying cause of action, the majority appears to create an exception to *Schleier, Burke,* and *Wesson* for cases in which the scope of available remedies was "unsettled" at the time of settlement. *See* op. at 4394. The majority justifies this exception by looking to Congress's

---

rules are perfect, and to the extent that the majority has identified an anomaly, it belongs to *Schleier* and *Burke,* which we are bound to follow.

**4.** In addition, I fail to understand why application of *Mertens* would cause an unjust result. Dotson's behavior was in no way affected by an

incorrect interpretation of ERISA: He found himself wronged against his will, sought the only possible legal recourse, and accepted the best available settlement. In fact, if the parties to *McLendon* had construed ERISA correctly, Dotson would have received a far smaller settlement. That Dotson already received one lucky break hardly makes it unjust to deny him another.

presumed intent and a public policy favoring "finality and predictability of taxation." *Id.* at 4395.

The majority's exception fails to serve either of these goals. First, while the majority may be correct that Congress feels "sympathy for the victims of personal injuries" *in general, see id.,* Congress specifically chose not to permit Dotson to recover for that injury. ERISA, "an enormously complex and detailed statute that resolved innumerable disputes between powerful competing interests," does not provide compensatory or punitive relief, *Mertens,* 508 U.S. at 262, 113 S.Ct. at 2071–72, and its broad preemption clause ensures that Dotson could not recover under state law, *see* ERISA § 514(a), 29 U.S.C. § 1144(a) (1994).

Thus, *Schleier* and *Mertens* reflect the same Congressional purpose—Congress limited the personal injury exclusion to legally protected injuries and chose not to protect Dotson's injury. The majority's extension of § 104(a)(2) to interests that are not legally protected is therefore inconsistent with both the Supreme Court's interpretation of that statute and the legislative purpose the majority purports to implement.

The majority opinion does not foster "finality and predictability of taxation," either. In order to determine whether Dotson prosecuted a tort-type action under its modified test, the majority finds itself examining the subjective motives of the litigants, the pleadings and course of proceedings, and the evidentiary rulings of the special master. *See* op. at 4394–96. Such a fact-intensive inquiry hardly fosters predictability.

In addition, predictability is generally considered to be important because it permits parties to structure their behavior with knowledge of its legal consequences. In the present context, however, wronged parties will litigate whatever claims are available to them, and defendants will settle if the cost of settlement is less than the expected cost of litigation. Thus, a plaintiff could change his behavior in only one respect—creation of a distorted paper trail purporting to show a good-faith belief in the availability of non-existent remedies. While crafty lawyering is inevitable, we need not encourage it.

Finally, *Schleier* and *Burke* are not distinguishable. While the law regarding the scope of available remedies was well-established at the time of the awards underlying those cases, the law regarding the awards' tax status was not. In fact, both cases reversed lower-court decisions and drew dissents. That *Schleier* and *Burke* clarified tax law rather than substantive law is irrelevant: We bear an obligation to treat similarly-situated litigants similarly, and therefore to apply the law—or at least our understanding of the law—to *all* parties before us. Some litigants are thereby disadvantaged, but that disadvantage results inexorably from "the nature of precedent, as a necessary component of any system that aspires to fairness and equality." *James B. Beam,* 501 U.S. at 543, 111 S.Ct. at 2447 (opinion of Souter, J.).

The Supreme Court retroactively applied tax decisions twice in recent years, *see Harper; James B. Beam,* each time subjecting litigants to mammoth tax liabilities. The Court rejected a "good faith" argument in the latter case: "Georgia collected in good faith what was at the time a constitutional tax. The Court now subjects the State to potentially devastating liability without fair warning." *James B. Beam,* 501 U.S. at 558, 111 S.Ct. at 2456 (O'Connor, J., dissenting). In short, the policy concerns driving the majority opinion are familiar ones, and the Court has already rejected them in favor of an orderly system of justice.

2.

Dotson and the majority cite to only one authority that supports their position, and the Supreme Court implicitly overruled that case. The decision in *Reese v. United States,* 28 Fed.Cl. 702 (1993), *aff'd,* 24 F.3d 228 (Fed.Cir.1994), cited by Dotson, illustrates the correct methodology. The Court of Federal Claims interpreted *Burke* to impose "two distinct requirements": The underlying suit must be tort-like, and the plaintiff must have received the excluded portion of the damage award "on account of" personal injury. *See id.* at 710. The petitioner sought to exclude punitive damages awarded for claims that were definitely tort-like: sex discrimina-

tion, sexual harassment, and intentional infliction of emotional distress. *See id.* at 703. In connection with the *second* requirement, the taxpayer contended that the jury's award of punitive damages should be considered to be compensatory rather than punitive because the law did not provide for recovery of punitive damages. The court rejected that argument, finding that characterization of the damage award did not depend upon subsequent legal developments. *See id.* at 711.

I agree with the straightforward analysis employed in *Reese.* Subsequent legal developments do not affect the character of an award and therefore do not have an impact on the *second* test. As the first test does not require characterization of the actual award, however, *Reese* does not speak to it.[5]

*Threlkeld* correctly states the first test: "The determination of whether damages are received on account of a personal injury properly depends on the nature of the claim." *Threlkeld v. Commissioner,* 87 T.C. 1294, 1305, 1986 WL 22061 (1986), *aff'd,* 848 F.2d 81 (6th Cir.1988). The passages quoted by the majority discuss the problem of determining *which* claim the parties settled, not whether that claim redresses tort-like injuries. *See id.* at 1305–06. The *Threlkeld* court found that the settlement at issue was attributable to a malicious prosecution claim, and "an action for malicious prosecution would be classified as an action for personal injuries" under state law. *Id.* at 1307. In short, the Tax Court correctly determined that the plaintiff's cause of action sounded in tort as a matter of substantive law, not on the facts of the case.

Finally, the Supreme Court implicitly has overruled *Redfield v. Insurance Co. of N. Am.,* 940 F.2d 542 (9th Cir.1991). *Redfield* holds that taxpayers may exclude awards of economic damages pursuant to the age discrimination in employment act ("ADEA"), *see id.* at 547; *Schleier* holds that ADEA damages are not excludable, because the act does not remedy tort type injuries, *see Schleier,*

—— U.S. at ——–——, 115 S.Ct. at 2166–67. The *Redfield* court erred in failing to recognize that a cause of action is tort-like only if it permits recovery of compensatory remedies.

The *Redfield* court also permitted the taxpayer to exclude damages awarded pursuant to state law claims because he "alleged [them] as tort causes of action" and "prayed for tort damages." 940 F.2d at 547. The court noted that a subsequent state supreme court case, which held that the state law at issue does not permit recovery of tort damages, "cannot retroactively alter the character of damages already awarded." *See id.* at 548 n. 2. Because the Ninth Circuit focused exclusively on the plaintiff's allegations in the underlying suit, rather than on the underlying cause of action, it failed to consider whether the subsequent ruling was relevant to the availability of compensatory or punitive damages *under the cause of action,* rather than under the actual award. In short, the court blurred the two tests for a § 104(a)(2) exclusion.[6]

As *Redfield* preceded both *Burke* and *Schleier,* the error is understandable. After those cases, however, we are not free to let the facts of the case before us override the first *Schleier* test. The majority's reliance on the outdated *Redfield* opinion instead of *Schleier, Burke,* and *Wesson* underscores its error.

### III.

Finally, it is important to remember the posture of this case. As Dotson's recovery is "gross income" within the meaning of 26 U.S.C. § 61(a) (1994), it is tax-exempt only if it falls within the personal injury exclusion of § 104(a)(2). We are therefore constrained by the "default rule of statutory interpretation that exclusions from income must be narrowly construed." *Schleier,* —— U.S. at ——, 115 S.Ct. at 2163 (quoting *Burke,* 504

---

5. The same is true of cases such as *Howard v. Commissioner,* 447 F.2d 152 (5th Cir.1971), that decline to recharacterize settlement proceeds based upon the merits of the underlying claims.

6. *Redfield* might also be distinguishable on the ground that it involved a change or clarification of state law by a state court. *Cf. Harper,* 509 U.S. at 100, 113 S.Ct. at 2519 (recognizing that state courts may be able to limit the retroactive effect of their declarations of state law).

U.S. at 248, 112 S.Ct. at 1878 (Souter, J., concurring in judgment)). Far from construing the exclusion narrowly, the majority departs from controlling authority in order to protect an injury that Congress chose to leave unprotected. The *McLendon* settlement is simply a windfall, like lottery winnings or punitive damages, unrelated to any legally-protected personal injury. *Cf. Wesson*, 48 F.3d at 900 (finding that punitive damages "may be aptly characterized as a windfall" and are not tax-exempt).

Accordingly, I respectfully dissent.