George J. HEMELT, et al., Plaintiffs,

v.

UNITED STATES of America, Defendant.

William W. SCHELL, et al., Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civil Nos. AMD 94–2490, AMD 95–3978.

United States District Court,
D. Maryland.

Oct. 22, 1996.

---

2. Forms of director and officer liability policies do exist which provide the kind of coverage Mountain Top is claiming that it purchased from General Accident. One example is found in *Continental Casualty Co. v. Board of Education of Charles County,* 302 Md. 516, 489 A.2d 536 (1985). There the school district purchased a policy with the standard two kinds of coverage— one for the trustees directly and one for the school district for indemnifying the trustees. In addition, the policy contained a "liberalization endorsement" in which the insurance company agreed to pay "all loss which the School District shall become legally obligated to pay." *Id.* 489 A.2d at 538. Thus the policy expressly provided coverage of liability for the school district itself.

Roslyn M. Litman, Pittsburgh, PA, John G. Jacobs, Chicago, IL, Stephen L. Hester, Washington, DC, for George J. Hemelt.

William J. Murphy, Baltimore, MD, for Theresa G. Hemelt.

Lynne A. Battaglia, Office of the U.S. Attorney, Baltimore, MD, Larry D. Adams, U.S. Attorney's Office, Greenbelt, MD, Michael J. Salem, U.S. Department of Justice, Washington, DC, for U.S.

## MEMORANDUM

DAVIS, District Judge.

These tax refund actions arise out of the 1990 settlement of a nationwide class action lawsuit instituted against the Continental Can Company involving thousands of Continental's former employees. The plaintiffs in each case, respectively, are a former class member and his spouse who paid income taxes on amounts the former employee received in the settlement of the class actions. The government disputes plaintiffs' characterization of the settlement proceeds as excludable "personal injury" compensation under § 104(a)(2) of the Internal Revenue Code, 26 U.S.C. § 104(a)(2), and has denied the plaintiffs' requests for a refund.[1]

These cases have been stayed pending the outcome of identical ligation in the Fifth Circuit in connection with a refund case filed by a former Continental employee in the United States District Court for the Southern District of Texas. In a 2–1 decision, a panel of the Fifth Circuit has recently reversed and remanded a summary judgment in favor of the government, *Dotson v. United States*, 87 F.3d 682 (5th Cir.1996), *rev'g* 876 F.Supp. 911 (S.D.Tex.1995), and the parties here have filed cross-motions for summary judgment, the familiar standards for which are undeniably present.[2] No hearing is necessary. Because I am constrained to the view that the dissenting judge in the Fifth Circuit has articulated the more persuasive analysis and resolution of the issues presented, I shall grant summary judgment in favor of the government and dismiss these cases.

---

1. At the times relevant to these cases, § 104(a) provided in relevant part:

> Compensation for injuries or sickness
> (a) In general.—Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 (relating to medical, etc., expenses) for any prior taxable year, gross income does not include—
> (1) amounts received under workmen's compensation acts as compensation for personal injuries or sickness;
> (2) the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness;
> (3) amounts received through accident or health insurance for personal injuries or sickness (other than amounts received by an employee, to the extent such amounts (A) are attributable to contributions by the employer which were not includable in the gross income of the employee, or (B) are paid by the employer);
> (4) amounts received as a pension, annuity, or similar allowance for personal injuries or sickness resulting from active service in the armed forces of any country or in the Coast and Geodetic Survey or the Public Health Service, or as a disability annuity payable under the provisions of section 808 of the Foreign Service Act of 1980; and
> (5) amounts received by an individual as disability income attributable to injuries incurred as a direct result of a violent attack which the Secretary of State determines to be a terrorist attack and which occurred while such individual was an employee of the United States engaged in the performance of his official duties outside the United States.

26 U.S.C.A. § 104 (West 1988).

2. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). *See also O'Connor v. Consolidated Coin Caterers Corp.*, 56 F.3d 542, 545 (4th Cir.1995), *rev'd on other grounds*, —— U.S. ——, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996).

*Dotson* sets forth the relevant procedural history of the Continental Can litigation out of which these cases arise as follows:

The case arises out of a settlement made in a consolidated class action lawsuit brought against Continental Can Company (Continental). Two separate classes of plaintiffs brought actions against Continental for violation of § 510 of ERISA, which makes [sic] provides that:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan

.    .    .    .    .

29 U.S.C. § 1140. Plaintiffs claimed that defendants, through the implementation of a nation-wide scheme to avoid pension liabilities [by selectively and discriminatorily laying off employees whose pension rights were about to vest], prevented them from obtaining benefits under the pension plan in violation of § 510. *Gavalik v. Continental Can Co.*, 812 F.2d 834, 838 (3rd Cir.), *cert. denied*, 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987); *see also, McLendon v. Continental Group, Inc.*, 749 F.Supp. 582, 583 (D.N.J.1989). After two bifurcated trials, Continental was found liable for violating § 510. *See Gavalik, supra* (reversing trial court judgment for Continental); *McLendon, supra.*

In order to litigate the remaining issue of damages, the *Gavalik* case was consolidated with the second case under the name *McLendon.* *McLendon v. Continental Group, Inc.*, 802 F.Supp. 1216 (D.N.J. 1992). The New Jersey district court appointed Yale Law Professor George Priest as Special Master in order to help the court fashion an appropriate remedy.

In December of 1990 the parties settled for $415 million to be distributed to the consolidated class by the Special Master. The court approved the settlement and Professor Priest's Plan for Distribution.

The Dotsons received $89,754, of which $19,877 went directly to a qualified pension fund. Of the remaining $64,872.35, $15,361.93 was withheld for income taxes, and $4,381.65 was withheld for FICA. The Dotsons filed an amended income tax return in December of 1993 which excluded the $64,872.35 from wages. They seek the resulting refund of $19,485 from income taxes, and a $1,107.65 from FICA taxes for the year 1992. After the IRS denied these claims, the Dotsons brought this action in the federal district court for the Southern District of Texas.

87 F.3d at 684. The *Dotson* court succinctly framed the issues for decision:

The district court held that damages received pursuant to § 502(a) and § 510 of the Employee Retirement Income Security Act (29 U.S.C. § 1132(a) and § 1140) do not meet the "personal injury" exclusion from income under § 104(a)(2) of the Internal Revenue Code (26 U.S.C. § 104(a)(2)). While the Special Master and the parties to the 1990 settlement clearly intended a tort-like compensatory remedy, which appeared to be available under reasonable interpretations of extant jurisprudence, later judicial decisions interpreting ERISA have cast doubt on the availability of such excludable compensatory remedies. This appeal raises the question of whether subsequent legal decisions more narrowly interpreting the availability of personal injury damages as statutory remedies affect the classification for tax purposes of a good faith, arm's length settlement based upon the reasonable potential for recovery of such damages under the then extant jurisprudence.

*Id.* The "subsequent legal decisions more narrowly interpreting the availability of personal injury damages as statutory remedies" and the "later judicial decisions interpreting ERISA cast[ing] doubt on the availability of such excludable compensatory remedies" referred to above are three Supreme Court cases. *U.S. v. Burke*, 504 U.S. 229, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992); *Commissioner of Internal Revenue v. Schleier*, —— U.S. ——, 115 S.Ct. 2159, 132 L.Ed.2d 294 (1995); and, most importantly, *Mertens v. Hewitt*

*Assocs.*, 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993).

In *Burke*, the Court held that Title VII of the Civil Rights Act of 1964 (prior to the 1991 amendments) did not authorize an award of compensatory or punitive damages but rather, authorized only equitable relief, including, where appropriate, back pay. 504 U.S. at 238, 112 S.Ct. at 1872–73. Thus, monetary awards (including amounts received in settlement of Title VII claims) under Title VII were not excludable from income under § 104(a)(2) of the Internal Revenue Code; such awards were not "on account of personal injuries." *Id.* at 242, 112 S.Ct. at 1874. In *Schleier*, the Court held that monetary relief awarded under the Age Discrimination in Employment Act of 1967 was similarly not excludable from the definition of income under § 104(a)(2) because, as a matter of statutory interpretation, and in light of the two-pronged test the Court fashioned in *Burke* for determination of § 104(a)(2) refund claims, the back pay and liquidated damages authorized by the ADEA were neither amounts received "on account of personal injuries or sickness" as required by § 104(a)(2), nor were such awards recoverable "based upon 'tort or tort type rights'" consistent with IRS regulations interpreting § 104(a)(2). —— U.S. at ——–——, 115 S.Ct. at 2165–66. Taken together, then, *Burke* and *Schleier* adopt a stringent analytic framework in respect to the tax treatment of monetary recoveries under some remedial federal statutory schemes which protect both pecuniary and non-pecuniary interests of individuals from discriminatory wrongdoing in the employment context. These decisions were vigorously opposed by dissenting members of the Court, *inter alia*, as taking too narrow a view of what constitutes "personal injuries." *See id.* at ——, 115 S.Ct. at 2169 ("[W]hether a remedy sounds in tort often depends on arbitrary characterizations.") (O'Connor, J., dissenting); *see also Burke*, 504 U.S. at 247, 112 S.Ct. at 1877 ("[T]here are good reasons to put a Title VII claim on the tort side of the line.") (Souter, J., concurring in the judgment.).

In *Mertens*, a case of first impression, the Court construed the language of ERISA § 502(a)(3) ("appropriate equitable relief") as it had construed, in *Burke*, similar language contained in Title VII ("any other equitable relief as the court deems appropriate") and held that § 502(a)(3) does not authorize an award of compensatory damages, i.e., recompense for personal injury. 508 U.S. at 255, 259–63, 113 S.Ct. at 2068, 2070–72. The *Mertens* holding was presaged by *Mass. Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). In *Russell*, the Court had held that a companion provision in ERISA to § 502(a)(3), § 502(a)(2), did not authorize compensatory or punitive damages (sometimes referred to as "extra-contractual" damages). Notwithstanding *Russell*, however, prior to *Mertens*, at least one federal appeals court had held that "extra-contractual" damages were recoverable in suits under ERISA § 502(a)(3), *e.g., Warren v. Society National Bank*, 905 F.2d 975 (6th Cir.1990), *cert. denied, Medina v. Anthem Life Ins. Co.*, 510 U.S. 816, 114 S.Ct. 66, 126 L.Ed.2d 35 (1993); most courts of appeals, however, relying on *Russell*, had rejected such claims as not authorized by ERISA, *e.g., Reinking v. Philadelphia American Life Ins. Co.*, 910 F.2d 1210, 1219–20 (4th Cir.1990). It is of particular interest that *dicta* in *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 145, 111 S.Ct. 478, 486, 112 L.Ed.2d 474 (1990), suggesting that "extra-contractual" damages might be available under § 502(a), provided specific impetus to the settlement of the Continental Can litigation. Of course, *Mertens* rejected, without even mentioning, the *Ingersoll–Rand dicta* in reaching the opposite conclusion when the issue was actually presented five years later.

Thus, the debate between the *Dotson* majority and the dissent (and the plaintiffs and the government in the instant cases) is essentially this: should the holding of *Mertens* (the only authoritative interpretation of the law that really matters—the Supreme Court's) be applied in these cases to deprive plaintiffs of their ability to exclude from income the payments they received in the Continental Can settlement, or does some principle of law or equity forbid or avoid that result? Stated differently, the issue is whether, given that plaintiffs recovered

amounts to which they were clearly not entitled under the Supreme Court's post-settlement determination of what ERISA provides, there exists today a defensible and justifiable basis for according those payments a tax treatment as if the Supreme Court had *not* spoken? I am persuaded that *Mertens* must be given effect in post-settlement tax refund actions such as the present cases. It follows, therefore, that because any compensation recovered (by judgment or settlement) under the authority of ERISA § 502(a)(3) is, as a matter of law, "equitable relief" and does not constitute vindication of "tort-like" rights, the payments are not excluded from income under § 104(a)(2) of the Internal Revenue Code. Ultimately, I am persuaded by the view expressed by the *Dotson* dissent that whatever the parties in the Continental Can litigation and the Special Master may have believed the Supreme Court would one day say about the availability of compensatory damages under ERISA, they knew that the Supreme Court had not spoken, and they knew that their expectations, even if "reasonable" at the time in light of "extant [lower court] jurisprudence," were simply that, *expectations* that were necessarily subject to any subsequent authoritative announcement of what the law is by the only authority with the power to do so.

The *Dotson* majority criticized the lower court for taking this approach in that case as relying on "hindsight." 87 F.3d at 686. The majority concluded that it was appropriate to give controlling significance to the "reasonableness" and the "good faith" of the parties and the Special Master in their joint efforts leading to the settlement of the Continental Can dispute. The majority reasoned as follows, in significant part:

> The district court misconceives the tort-like claims requirement for exclusion. The characterization of damages received is not affected by the shifting sands of statutory interpretation after a bona fide settlement has been reached or a damage award rendered.... The characterization of the settlement depends upon the determination that the damages were received "through prosecution of a legal suit or action based upon tort or tort-type rights ..." Treasury Reg. 26 C.F.R. 1.104–1(c).

The fact that such a remedy may no longer exist is irrelevant to the determination of the character of a settlement to be taxed.

> Although the Supreme Court's decision in *Mertens* may retroactively apply to pending ERISA cases, this case is not an ERISA case. It is an income tax case involving the tax treatment of a final settlement of a claim for damages under ERISA that was concluded before the issue of first impression decided by the sharply divided *Mertens* court was even clearly foreshadowed. Consequently, *Mertens* does not change the classification of the instant settlement for tax purposes any more than it could retroactively reduce the amount of the settlement which the parties made based on their now perhaps outmoded interpretation of ERISA law.

*Id.* The majority distinguished the *Burke* and *Schleier* cases on the ground that judicial interpretation of the statutory remedies in those cases—under Title VII and ADEA—was not "unsettled." *Id.* at 687. Thus, in effect, the majority concluded that (1) the lack of an authoritative determination of the scope of remedies available under ERISA § 502(a)(3) at the time of the Continental Can settlement (coupled with the parties' reasonableness and good faith, and a structural interest in "finality and predictability of taxation") vitiated any requirement that the *Mertens* rule be applied retrospectively, and (2) the factual circumstance that Dotson (like the plaintiffs in the instant cases) suffered little, if any, pecuniary loss, and therefore some portion of his settlement proceeds necessarily represented compensation for "dignitary injuries" justified the conclusion that he had received some portion of his proceeds "on account of personal injury" even if current law (i.e., post–*Mertens*) would not recognize any recovery under ERISA § 502(a)(3) as based "on account of personal injuries." The majority remanded the case to the district court for calculation of the excludable portion of the plaintiff's recovery.

Judge Smith dissented. I find his reasoning in dissent more persuasive and therefore adopt it in full. He reasoned as follows, in significant part:

The majority attempts to distinguish three controlling Supreme Court precedents by declining to give retroactive effect to one of them, in violation of that Court's retroactivity jurisprudence, and by then looking to a policy concern that contravenes an intricate and carefully-considered congressional enactment.... [N]either rationale [is] persuasive....

The Supreme Court recently held as follows:

[There are] two independent requirements that a taxpayer must meet before a recovery may be excluded under § 104(a)(2). First, the taxpayer must demonstrate that the underlying cause of action giving rise to the recovery is "based upon tort or tort type rights"; and second, the taxpayer must show that the damages were received "on account of personal injuries or sickness."

Thus, even though the conduct giving rise to Dotson's recovery caused him personal injury, and though the parties to *McLendon v. Continental Group, Inc.,* 802 F.Supp. 1216 (D.N.J.1992), intended that the settlement would compensate for that injury, Dotson may deduct his recovery only if his cause of action—the Employee Retirement Income Security Act of 1974 ("ERISA")—is "based upon tort or tort type rights."....

A cause of action is based upon tort or tort-type rights only if it creates a remedy for a personal injury.... Specifically, it must provide for recovery of compensatory or punitive damages. A claim that permits only equitable relief for "injuries of an economic character" does not pass this test....

ERISA's civil enforcement provision, ERISA § 502(a), 29 U.S.C. § 1132(a) (1994), does not permit recovery of compensatory or punitive damages....

....

Dotson asserts that we should characterize the settlement according to his allegations in *McLendon,* not in light of subsequent legal developments. This contention is irrelevant.

As explained above, there are two requirements for a § 104(a)(2) exclusion.

The first asks whether the underlying *cause of action* redresses personal injury; the second looks to whether the *settlement* compensates for such an injury.... In short, the first test requires a legal classification, the second a factual characterization.

Dotson is correct that *Mertens* and *Medina* [*v. Anthem Life Ins. Co.,* 983 F.2d 29 (5th Cir.), *cert. denied,* 510 U.S. 816, 114 S.Ct. 66, 126 L.Ed.2d 35 (1993)] do not affect the factual determination of whether the *settlement* actually compensated for personal injury, but he cannot avoid the fact that those cases classify his *cause of action* as one that does not redress personal injury. As "[a] judicial construction of a statute is an authoritative statement of what the statute meant *before as well as after* the decision of the case giving rise to that construction," *Rivers v. Roadway Express,* 511 U.S. 298, 312–13, 114 S.Ct. 1510, 1519, 128 L.Ed.2d 274 (1994) (emphasis added), *Mertens* and *Medina* control.

As ERISA does not permit recovery of compensatory or punitive damages, it does not redress personal injuries.... Thus, Dotson has not met the threshold requirement for a § 104(a)(2) exclusion.

[A]s the Supreme Court is the authoritative interpreter of federal law, earlier lower-court opinions [allowing tort-like damages under ERISA § 502(a)(3)] are "wrong".... Thus, *Mertens* holds that ERISA *never* provided compensatory remedies, and lower courts were in error to believe otherwise.

[T]he Supreme Court recently prohibited "the erection of selective temporal barriers to the application of federal law" in all cases:

When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in *all* cases still open on direct review and as to *all* events, regardless of whether such events predate or postdate our announcement of the rule.

*Harper v. Virginia Dep't of Taxation,* 509 U.S. 86, 97, 113 S.Ct. 2510, 2517, 125 L.Ed.2d 74 (1993) (emphasis added).

. . . .

In reality, this case does not implicate the principle of retroactivity. "It is only when the law changes in some respect that an assertion of nonretroactivity may be entertained." *James B. Beam [Distilling Co. v. Georgia],* 501 U.S. [529 (1991)] at 534, 111 S.Ct. [2439] at 2443 [115 L.Ed.2d 481] (opinion of Souter, J.). Neither the Supreme Court, nor the Third Circuit (in which the parties settled *McLendon* ), nor this circuit has ever held that ERISA permits the recovery of compensatory or punitive damages. The controlling law never changed; the parties to *McLendon* simply read it incorrectly. To the extent that it declines to apply controlling precedent, the majority opinion is simply in error.

. . . .

The *McLendon* settlement is simply a windfall, like lottery winnings or punitive damages, unrelated to any legally-protected personal injury.

87 F.3d at 690–95 (footnotes and citations omitted).

I conclude that this approach accurately resolves the dispute in these cases. In my view, the excludability of amounts recovered in settlement of a claim under ERISA § 502(a)(3) was an "open question" of statutory interpretation at the time of the Continental Can settlement. The question has now been answered in a way that admittedly frustrates plaintiffs' expectations. Nevertheless, the Supreme Court's answer to the question must be given "full retroactive effect . . . to *all* events, regardless of whether such events predate or postdate" the Court's pronouncement of the law. *Harper v. Virginia Dep't of Taxation,* 509 U.S. 86, 97, 113 S.Ct. 2510, 2517, 125 L.Ed.2d 74 (1993) (emphasis added); *see Rivers v. Roadway Express,* 511 U.S. 298, 312–13, 114 S.Ct. 1510, 1519, 128 L.Ed.2d 274 (1994). This conclusion is neither fantastic nor unfair. "That [plaintiffs] already received one lucky break [in obtaining compensation not authorized by ERISA] hardly makes it unjust to deny [them] another." *Dotson,* 87 F.3d at 692, n.

4 (Smith, J., dissenting). Accordingly, the government's motion for summary judgment shall be granted and the plaintiffs' motions for summary judgment shall be denied. A separate order is entered herewith.