**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 99-40544
Summary Calendar
_____


CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, Who Are Members of Lloyd's Syndicates Numbered 658, 483, 741, 687, 79, 872, 535, 552, 123, 114, 741, 209, 1023, 309, 872 and 500; INDEMNITY MARINE ASSURANCE CO LTD; ZURICH RE (U K), Ltd; OCEAN MARINE INSURANCE CO LTD; COMMERCIAL UNION ASSURANCE; THE TOKIO MARINE & FIRE; PHOENIX ASSURANCE PLC, LSA; NORTHERN ASSURANCE COMPANY LIMITED; GAN MINSTER INSURANCE CO, LTD; TERRA NOVA INSURANCE COMPANY LTD; PHOENIX ASSURANCE PUBLIC LTD; CORNHILL INSURANCE PLC; YORKSHIRE INSURANCE CO, LTD; SKANDIA MARINE INSURANCE COMPANY (U K); SCOTTISH LION INSURANCE CO, LTD; HANSA RE & MARINE INSURANCE COMPANY (UK) LIMITED; THREADNEEDLE INSURANCE CO, LTD; SPHERE DRAKE INSURANCE; DAI-TOKYO INSURANCE CO; COMPAGNIE D'ASSURANCEY MARTINES; AERIENNES & TERRESTRES (CAMAT); AMERICAS INSURANCE COMPANY; HANSA RE-MARINE; ANGLO AMERICAN INSURANCE COMPANY; GAN FRANCE; PHOENIX 09/01/75; TERRA NOVA; CAMAT 1992; CORNHILL D A/C; SKANDIA MARINE; INDEMNITY MARINE; YORKSHIRE L A/C; ZURICH RE; OCEAN MARINE; PHOENIX LSA A/C; NORTHERN MARINE; LONDON & EDINBURGH; GAN MINSTER; GENERALI; SPHERE DRAKE NO. 1; SCOTTISH LION,

                                        Plaintiffs-Appellants,


                        VERSUS


                ORYX ENERGY COMPANY,

                                        Defendant-Appellee.


_____

Appeal from the United States District Court
for the Southern District of Texas
February 25, 2000
_____

Before SMITH, BARKSDALE and PARKER, Circuit Judges.


1

PER CURIAM:

Plaintiffs-appellants ("Underwriters") appeal a summary judgment for their insured, Defendant-appellee Oryx Energy Company in their suit for reimbursement for monies paid in settlement of a personal injury claim. We affirm.

FACTS AND PROCEDURAL HISTORY

Henry Mote filed a personal claim against Oryx for compensatory and punitive damages arising out of an injury he sustained while working on Oryx's fixed platform located on the Outer Continental Shelf offshore Texas. A mediation involving Mote, Oryx and Underwriters resulted in a $12,000,000 settlement of Mote's claims. Underwriters paid $11,050,000 of the settlement and sued Oryx for reimbursement. Oryx sued Underwriters for a declaration that Underwriters owed full coverage.

The trial court initially entered judgment against Oryx on the coverage question. This court reversed, holding that neither the terms of the policy nor the relevant Texas law[1] limited coverage for compensatory damages. *See Certain Underwriters at Lloyd's London v. Oryx Energy Co.*, 142 F.3d 255, 258-60 (5th Cir. 1998). We then noted that Underwriters were entitled to reimbursement for any funds paid in the Mote settlement to cover punitive damages and

---

[1]Under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1349(b)(1)(A)(1986), the law of the state adjacent to where the accident occurred governs. *See Hodgen v. Forest Oil Corp.*, 87 F.3d 1512 (5th Cir. 1996). Mote's accident occurred in Texas waters and, consequently, Texas law governs this case.

remanded the case to district court to determine how much, if any, of the settlement payment was attributable to punitive damages. *See id.* at 260. On remand, the district court granted summary judgment to Oryx,[2] holding that all of the settlement funds were compensatory and not punitive in nature.

## DISCUSSION

We review the grant of summary judgment *de novo*, affirming only if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *See H.E. Butt Grocery Co. v. Nat'l Union Fire Ins. Co.*, 150 F.3d 526, 528-29 (5th Cir. 1998).

The Full and Final Release ("Release") signed by all parties to the Mote settlement included the following language:

> All sums set forth herein, be they lump sum payments or periodic payments from the annuities, constitute damages on account of personal injuries or sickness within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, as amended.

It is well settled, and undisputed by the parties, that amounts paid "on account of personal injuries or sickness" within the meaning of § 104(a)(2) do not encompass punitive damages. *See Commissioner of Internal Revenue v. Schleier*, 515 U.S. 323, 331-32 (1995). Underwriters argue that, in spite of the unequivocal

---

[2]Our determination on the record before us on the first appeal that the parties had raised a genuine issue of material fact regarding the amount attributable to punitive damages did not preclude summary judgment on remand based on settlement documents not previously before the court.

language in the release, some part of the settlement funds were punitive damages. They contend that the court must consider factors other than the agreement in the release which, when taken into consideration, raise a genuine issue of material fact concerning the proper characterization of the payments.

Under Texas law, a settlement agreement is a contract subject to the same rules of construction as other contracts. *See Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990). A court's primary concern in construing a contract is to ascertain the intentions of the parties as expressed in the instrument memorializing their agreement. *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

Underwriters maintain that the district court erred in not taking into consideration (1) the allegations in the underlying pleadings; (2) the evidence before the court in the underlying case; (3) the intent of the payor; and (4) the principle that a court should not unduly reward insureds who seek indemnification for actions they never insured, citing *Dotson v. U.S.*, 87 F.3d 682, 687-88 (5th Cir. 1996). *Dotson,* a case concerning a dispute between the IRS and a taxpayer over the allocation of settlement funds, is inapposite. Under the tax code, some kinds of damages constitute taxable income and some do not. *See, e.g.*, *United States v. Burke*, 504 U.S. 229, 233 (1992). When a plaintiff seeks both taxable and non-taxable damages, the parties may craft a settlement purporting to allocate all proceeds to non-taxable

4

categories of damages, benefitting plaintiff and defendant at the government's expense. Thus, the courts allow the IRS to try to prove that the allocation is a sham to conceal payment of taxable damages. *See Dotson,* 87 F.3d at 687. Because the IRS is an outsider to such a settlement, it is appropriate to permit the IRS to question the allocation. Likewise, when an insurer denies coverage and its insured proceeds unilaterally to settle a mixture of covered and non-covered claims, the insurer may be allowed to impeach the settlement allocation if there is a risk of collusion between the insured and the claimant. *See Enserch Corp. v. Shand Morahan & Co., Inc.*, 952 F.2d 1485, 1493-94 (5th Cir. 1992).

The Underwriters, having participated fully in the settlement in this case, do not occupy a position analogous to the IRS or to an insurer absent from the negotiating table. Therefore, the district court did not err in focusing on the Release as the embodiment of the parties' intent and declining to consider the Underwriters' other proposed factors.

The Underwriters next contend that language in the release itself creates a genuine issue of material fact concerning whether the settlement included punitive as well as compensatory damages. The language in question reserves the Underwriters' right to sue for reimbursement of "all sums paid in excess of reasonable compensatory damages sustained by Henry Mote . . . in other words, for any and all punitive or exemplary damages which had to be paid

5

to settle the case." This argument fails. The reservation of rights merely preserves procedural avenues; it does not articulate any agreement or substantive position that could be read to conflict with the express language "all sums set forth herein . . . constitute damages on account of personal injuries or sickness."

Underwriters also call our attention to the section of the Release where all defendants and counter-defendants and their insurers agree to release their claims and potential claims against one another. At the end of that paragraph, the Underwriters added "it is the position of [the Underwriters] that the foregoing is without prejudice to and does not waive or otherwise affect the reservations raised by [the Underwriters]." This unilateral statement of position concerning the reservation of rights does not purport to characterize any settlement proceeds as punitive damages in conflict with the clear agreement in the prior paragraph of the Release.

The other evidence Underwriters submitted, including written correspondence wherein they suggested amounts to be paid by Oryx for punitive damages, Mote's itemization of his damages prior to the mediation, the opinion of Oryx's trial counsel as to the amount that should be allocated to punitive damages and boilerplate disclaimers by Oryx and Underwriters regarding tax consequences cannot undermine the unambiguous allocation set forth in the Release.

We therefore affirm the summary judgment for Oryx.

6

AFFIRMED.