United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 2, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————————
No. 04-51223
———————————————

AMERICAN STATES INSURANCE COMPANY; ET AL,

Plaintiffs,

AMERICAN ECONOMY INSURANCE COMPANY,

Plaintiff-Appellant,

versus

SYNOD OF THE RUSSIAN ORTHODOX CHURCH OUTSIDE OF RUSSIA; ET AL,

Defendants,

SYNOD OF THE RUSSIAN ORTHODOX CHURCH OUTSIDE OF RUSSIA,

Defendant-Appellee.

———————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:00-CV-824

———————————————

Before REAVLEY, HIGGINBOTHAM, and GARZA, Circuit Judges.

PER CURIAM:[*]

American Economy Insurance Co. ("American Economy") appeals

the district court's judgment, entered on remand from this Court,

declaring that American Economy has a duty to indemnify the Synod

of Bishops of the Russian Orthodox Church Outside of Russia (the

"Church") for the costs of the settlement and attendant litigation

———————————————

[*] Pursuant to the 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under limited circumstances set forth in 5TH CIR. R. 47.5.4.

of a separate lawsuit.  We affirm.

I

In August 2000, the Church was sued in Texas state court on behalf of a minor, SSG, who alleged that he had been molested by two monks at a monastery in Blanco County, Texas.  The Church promptly notified American Economy, its then insurer, of the suit. American Economy agreed to defend the Church, subject to a reservation of its right to contest coverage.  Mr. Jacobs, hired by American Economy, and Ms. Hughes, hired by the Church, both represented the Church in the underlying suit.

The Church then sought a declaratory judgment in Texas state court to clarify American Economy's obligations to the Church under the insurance policy.  Among other things, the Church sought a declaration that American Economy had a duty to defend and indemnify it in the underlying lawsuit.  American Economy removed the case to federal court.  Both parties moved for partial summary judgment on the issues of defense and indemnification.  The district court granted partial summary judgment in favor of the Church and ordered that American Economy defend and indemnify the Church.  American Economy filed a motion for reconsideration.

The parties in the underlying suit commenced settlement negotiations, for which American Economy assigned Ms. Fowler as claim adjuster.  The underlying lawsuit by the minor was then settled.  As a result, the parties to the federal district court

case agreed to dismiss as moot all issues related to the duty to defend while reserving rights to contest indemnification. The district court denied the motion for reconsideration, concluding that American Economy had a duty to indemnify. American Economy appealed.

This Court, in *Bishops I*, vacated the district court's judgment with respect to the duty to indemnify and remanded the case, finding that the district court "erred when it incorrectly assumed that [American Economy] had a duty to indemnify the Church based solely on its duty to defend."[1] This Court further held that the duty to indemnify is measured against the actual basis for an insured's liability and that "[t]he district court should have determined whether the Church had shown that the settled claim was a covered loss under the insurance policy" in order for the Church to be indemnified.[2] In footnote four, this Court explained that it was unable to make the determination itself based on the record, for lack of evidence proving that the dates of molestation coincided with the term of coverage under the insurance policy.[3]

On remand, the district court found that SSG's claim was a covered loss under the policy and that American Economy had a duty to indemnify the Church because the incidents leading up to the

---

[1] *Am. States Ins. Co. v. Synod of the Russian Orthodox Church Outside of Russia*, 335 F.3d 493, 496 (5th Cir. 2003) ("*Bishops I*").

[2] *Id.*

[3] *Id.* at 497 n.4.

3

underlying lawsuit occurred during the coverage term. American Economy appealed, claiming that the district court erred by failing to follow this Court's mandate that it consider whether the settlement represented a potentially covered loss under the policy. Specifically, American Economy argued that the district court failed to examine whether the settlement award represented punitive damages which are not insurable under controlling New York law.[4]

This Court reversed in *Bishops II*, finding a justiciable issue of fact regarding whether some portion of the settlement represented uninsurable punitive damages.[5] We described the relevant New York law as requiring an insurer "to indemnify an insured for a settlement when the settlement is made to settle a suit which involved a potential liability based on the facts known to the insured, and the settlement was reasonable in light of the size of possible recovery and the likelihood that the insured would have been found liable at trial."[6] We also noted the lack of evidence demonstrating what percent of the award was punitive and, therefore, reversed the judgment declaring American Economy liable

---

[4] *See Public Service Mut. Ins. Co. v. Goldfarb*, 425 N.E.2d 810, 814 (N.Y. 1981). While New York law initially governs, the settlement agreement contains an unambiguous choice of law provision, selecting Texas law as the controlling jurisprudence.

[5] *Am. States Ins. Co. v. Synod of the Russian Orthodox Church Outside of Russia*, 2004 U.S. App. LEXIS 18310 ("*Bishops II*") (citing *National Union Fire Ins. Co. of Pittsburgh Pa. v. Ambassador Group, Inc.*, 556 N.Y.S.2d 549, 553 (App. Div. 1990).

[6] *Am. States Ins. Co.*, 2004 U.S. App. LEXIS 18310 (citing *Luria Bros & Co. v. Alliance Insurance Co.*, 780 F.2d 1082, 1091 (2d Cir. 1986)).

for indemnification of the Church for all settlement expenses.[7] We remanded the case to the district court for a determination of the amount of any punitive damages impermissibly included in the settlement award.

On remand, following a bench trial, the district court found that the settlement award did not contain an award of punitive damages. American Economy now argues that the district court erred on remand by limiting the inquiry to only the possibility of punitive damages in the settlement award and challenges whether the record supports a finding that the Church fully met its burden of proof to show coverage under *Luria Bros. & Co*.[8] Specifically, American Economy contends that the Church has not established that the settlement derives from covered losses under the policy and that the settlement amount was reasonable in view of the potential liability and the probability of recovery.

II

On appeal from judgment after a bench trial, we review the district court's findings of fact for clear error and questions of law *de novo*.[9] A finding of fact is clearly erroneous "when,

---

[7] *Id.*

[8] *Luria Bros & Co.*, 780 F.2d at 1091; *Employers Casualty Co. v. Block*, 744 S.W.2d 940, 943-44 (Tex. 1988) (stating the insured has the burden to prove insurance coverage), *cited in Am. States Ins. Co.*, 335 F.3d at 496.

[9] *Houston Exploration Co. v. Halliburton Energy Serv. Inc.*, 359 F.3d 777, 779-780 (5th Cir. 2004) (citing *Gebreyesus v. F.C. Schaffer & Assoc. Inc.*, 204 F.3d 639, 642 (5th Cir. 2000)).

5

although there is evidence to support it, the reviewing court, based on all evidence, is left with the definitive and firm conviction that a mistake has been committed."[10]  However, findings induced by, or resulting from, a misapprehension of controlling substantive principles of law lose that insulation of the clearly erroneous standard.[11]  We review *de novo* whether a district court faithfully and accurately followed our mandate on remand.[12]

III

Under governing New York law,[13] the Church has the burden of demonstrating two elements, in order to establish that American Economy has a duty to pay for the settlement.  The Church must show (A) that "the settlement [was] made to settle a suit which involved a potential liability  based on the facts known to the insured" and (B) that "the settlement was reasonable in light of the size of possible recovery and the likelihood that the insured would have been found liable at trial."[14]

A.

American Economy argues that our opinion on remand did not

---

[10]  *Id.; Canal Barge Co. Inc., v. Torco Oil Co.*, 220 F.3d 370, 375 (5th Cir. 2000).

[11]  *U.S. v. Richberg*, 398 F.2d 523, 530 (5th Cir. 1968).

[12]  *Sobley v. Southern Natural Gas Co.*, 302 F.3d 325, 332 (5th Cir. 1998).

[13]  *Am. States Ins. Co.*, 335 F.3d at 495.

[14]  *Am. States Ins. Co.*, 2004 U.S. App. LEXIS 18310 (citing *Luria Bros & Co.*, 780 F.2d at 1091).

6

imply that the Church had answered the larger question of whether the settlement represents payment solely for covered claims, that the district court incorrectly limited the inquiry on remand to determining the amount of any punitive damages included in the settlement, and that, ultimately, the Church did not meet its burden of proving the settlement amounts allocable to the policy.[15] Specifically, American Economy presently contends that the settlement award impermissibly includes reparation for the intentional conduct of the monks, not covered under the insurance policy,[16] which inflates the settlement award beyond that for which American Economy is responsible.

On the first appeal to this Court, *Bishops I*, American Economy refuted the district court's holding that the duty to defend was commensurate with the duty to indemnify. Relying on *Servidone*,[17] American Economy, though admitting a duty to defend, contended that it did not owe a duty to indemnify. Arguing that the district court applied the wrong standard in determining its duty to

---

[15] *Am. States Ins. Co.*, 335 F.3d at 497 n. 3.

[16] The monks do not qualify as insureds because clergy are considered insureds under the policy only "with respect to their duties as such;" their intentional misconduct does not constitute an occurrence as required by the policy because sexual molestation is intentional (*Public Service Mut. Ins. Co. v. Camp Raleigh, Inc.*, 650 N.Y.S.2d 136, 137 (1996)). Furthermore, intentional criminal conduct is uninsurable under New York law (*Goldfarb,* 425 N.E.2d at 813).

[17] *Servidone Construction Corp. v. Security Insurance Co. of Hartford*, 64 N.Y.2d 419 (1985) ("The duty to defend is measured against the allegations of pleadings but the duty to pay is determined by the actual basis for the insured's liability to a third party."), *cited in  Am. States Ins. Co.*, 335 F.3d at 496.

7

indemnify the Church, American Economy asserted that it owed no duty because the church had not proved that it faced actual liability. We rejected that argument, holding that the Church need not prove its own liability.[18] Rather, it need only show that the claims would be covered under the terms of the insurance agreement--a showing that the district court on remand found the Church made by demonstrating an occurrence of bodily injury during the policy period in the coverage territory. Therefore, the district court ruled, as a matter of law, that the Church met its burden of proving that the claims against the Church would be covered under the policy agreement.

On the second appeal to this Court, *Bishops II*, American Economy, citing *Luria Bros & Co.*,[19] urged that the district court failed to determine properly if the settlement represented a covered loss. Specifically, American Economy argued that the settlement award impermissibly included punitive damages. We agreed and remanded for a lack of evidence allocating funds within

---

[18] *Luria Bros & Co.*, 780 F.2d at 1091; *see Uniroyal v. Home Insurance Co.*, 707 F.Supp. 1368, 1379 (E.D.N.Y. 1998) (stating "an otherwise covered claim, once settled, [need not] be proven anew by the insured"), *cited in Am. States Ins. Co.*, 335 F.3d at 496.

[19] *Id.* (stating the insured need not establish actual liability to the party with whom it has settled "so long as...a potential liability on the facts known to the [insured is] shown to exist, culminating in a settlement in an amount reasonable in view of the size of possible recovery and degree of probability of claimant's success against the [insured]" (quoting *Damanti v. A/S Inger*, 314 F.2d 395, 397 (2d Cir. 1963), *cert. denied*, 375 U.S. 834 (1963)), *cited in Am. States Ins. Co.*, 2004 U.S. App. LEXIS 18310).

8

the settlement payment.[20]

On remand, the district court determined that the total settlement amount represented only compensatory damages. American Economy does not now object to this determination but, on this, the third appeal to this Court, contends that the ruling as to punitive damages still does not answer the question of coverage; removing punitive damages still leaves the possibility that a portion of the compensatory damages may have been negotiated in satisfaction of the monks' intentional conduct, also prohibited from inclusion in the settlement payment under the insurance policy.

The Church answers that American Economy has waived the argument by not raising it earlier. We agree. It did not raise the issue of intentional criminal conduct as a bar to coverage on the first appeal of the same legal question. American Economy had the opportunity to argue that some portion of the settlement was not covered, and it did–concerning punitive damages. It should have raised the intentional conduct argument then, where we could have addressed it and instructed the lower court accordingly. American Economy, however, did not. The contention was waived, and, thus, the district court did not err in limiting its inquiry only to the allocation of compensatory and punitive damages in the settlement.

B.

---

[20] *See Am. States Ins. Co.*, 2004 U.S. App. LEXIS 18310.

Again relying on *Luria Bros & Co.*,[21] American Economy urges that the Church failed to meet its burden of proof concerning the reasonableness of the settlement amount, given the limited size of the potential recovery and the unlikelihood of success. Though the district court did not expressly address the reasonableness issue apart from the issue of whether punitive damages were included in the settlement agreement, the district court appropriately relied on *Certain Underwriters*, which holds that a reservation of rights agreement between the insurer and the insured "merely preserves procedural avenues. It does not articulate any agreement or substantive position that could be read to conflict with the express language [of the settlement agreement]."[22] The district court held, and it is uncontested, that the settlement agreement unambiguously excludes punitive damages. Where the insurer has a reservation of rights agreement and is involved in the settlement negotiations, as the district court found,[23] the insurer has no right to challenge the allocation between parties and claims of a clearly apportioned settlement amount.[24]

We are persuaded that this also rings true for protestations

---

[21] *Luria Bros. & Co.*, 780 F.2d at 1091., *cited in Am. States Ins. Co.*, 335 F.3d at 496.

[22] *Certain Underwriters at Lloyd's, London v. Oryx Energy Company*, 203 F.3d 898, 901 (5th Cir. 2000).

[23] The district court expressly found that "the insurer was not absent from the negotiating table."

[24] *Certain Underwriters at Lloyd's, London*, 203 F.3d at 901.

10

over the reasonableness of the settlement.[25]  If American Economy participated in the settlement process, it may not now challenge the reasonableness of the settlement amount.  American Economy denies its participation.

American Economy received and rejected the first two settlement demands.  Though American Economy downplays its significance, American Economy's own hire, Mr. Jacobs, represented the Church in the underlying lawsuit and set a range of the Church's potential liability at $300,000-$900,000--a range that American Economy acknowledged includes the settlement amount of $787,500.  American Economy made the first counteroffer, in response to the settlement demand.  Ms. Fowler, American Economy's adjuster, requested updates and was habitually informed of negotiation progress, including the subsequent offers and counteroffers.  Also, it was Mr. Jacobs who drafted the settlement agreement that memorializes the parties' intentions.  We conclude that the district court did not clearly err in findings that American Economy participated in the settlement negotiations.

The district court appropriately resolved the viable issues on remand, regarding the potential liability under the policy and the reasonableness of the settlement.

AFFIRMED.

---

[25]  *Id.* ("...having participated fully in the settlement...the district court did not err in focusing on the Release as the embodiment of the parties' intent and declining to consider...other proposed factors.").

11

Judge Garza concurs in the opinion except for Part III-B, and in the judgment.