# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 27, 2021

Lyle W. Cayce
Clerk

No. 20-60188

CONSOLIDATED WITH

No. 20-60263

BIG BINDER EXPRESS, L.L.C.; RAYMOND GOODLIN,

*Plaintiffs—Appellees*,

*versus*

LIBERTY MUTUAL FIRE INSURANCE COMPANY,

*Defendant—Appellant*,

*versus*

DARLING INGREDIENTS, INCORPORATED,

*Intervenor—Appellee*.

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 3:19-CV-22

Before HAYNES, DUNCAN, and ENGELHARDT, *Circuit Judges*.

No. 20-60188
c/w No. 20-60263

Per Curiam:*

In this insurance coverage case, the district court granted summary judgment in favor of the insureds—Big Binder Express, L.L.C. ("Big Binder"), Raymond Goodlin (a Big Binder employee), and Darling Ingredients, Inc. ("Darling"). For the reasons below, we VACATE and REMAND for the district court to enter a judgment consistent herewith.

## I.    Background

This lawsuit stems from an automobile accident on May 14, 2018, between a vehicle driven by Goodlin, acting within the course and scope of his employment at Big Binder, and another vehicle carrying five individuals. Goodlin was driving a tractor with an attached trailer; the tractor was owned by Tri-State Idealease, Inc. and leased to Big Binder, and the trailer was owned by Darling and leased to Big Binder. Later that year, two of the five passengers in the other vehicle filed personal injury lawsuits (the "Underlying Lawsuits"). Both lawsuits alleged that Goodlin acted negligently and that Big Binder and Darling were also negligent because Goodlin was acting as their employee when the accident occurred.

At the time of the accident, Big Binder had commercial auto and commercial general liability coverage from Northland Insurance Company ("Northland") and Darling had coverage from Liberty Mutual Fire Insurance Company ("Liberty Mutual"). Northland's insurance policy (the "Northland Policy") provided auto liability coverage of $1 million per accident. Liberty Mutual's insurance policy (the "Liberty Mutual Policy"), bearing Policy No. AS2-681-025265-017, included three documents relevant to this appeal: (1) the Policy Declarations, which limited auto liability coverage to $2 million per accident; (2) a Business Auto Coverage Form,

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-60188
c/w No. 20-60263

which explained the coverage for automobiles under the Liberty Mutual Policy; and (3) a Deductible Endorsement.

In resolving the Underlying Lawsuit, Northland provided a defense to Big Binder and Goodlin. Liberty Mutual provided coverage to Darling and to Big Binder and Goodlin as additional insureds to the Liberty Mutual Policy. In providing coverage, Liberty Mutual contended that the Liberty Mutual Policy limited liability coverage to $2 million, Big Binder and Goodlin were responsible for the $1 million deductible in the Deductible Endorsement, and tender of Northland's liability limit of $1 million would not satisfy the deductible. Liberty Mutual's assertions regarding its Deductible Endorsement resulted in this lawsuit. The relevant portion of the Deductible Endorsement provides:

Policy Number: AS2-681-025265-017
Issued by:      Liberty Mutual Fire Insurance Co.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**DAMAGES AND SUPPLEMENTARY PAYMENTS DEDUCTIBLE – ALL COVERAGE**

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

**SCHEDULE**

| | | |
|---|---|---|
| All Coverage and Supplementary Payments | $1,000,000 | Deductible Amount each "accident" and/or "loss" |
| Aggregate Deductible Amount for all "accidents" and "loss" during the policy period | $            or a rate of        per | , whichever is greater. |
| Applicable Policies: | | |

1.  You are responsible, up to the Deductible Amount shown in the Schedule, for the total of:

    a.  All payments for damages and/or "loss", as applicable, for any coverage provided by a policy listed under Applicable Policies in the Schedule; plus

    b.  All Supplementary Payments under such policy.

3

No. 20-60188
c/w No. 20-60263

In February 2019, Big Binder and Goodlin (collectively, in the context of this lawsuit, "Big Binder") sued Liberty Mutual[1] in federal district court, seeking a declaratory judgment that the Deductible Endorsement is unenforceable because it left the "Applicable Policies" section of the endorsement blank, such that the plain and unambiguous language of the endorsement provided for no applicable deductible. Alternatively, if the Deductible Endorsement were enforceable, Big Binder sought a declaratory judgment that the Deductible Endorsement did not apply to them because they were not named insureds or, in any event, that Northland's payment of $1 million would satisfy Liberty Mutual's deductible requirement.

Darling intervened, agreeing with Big Binder that the Deductible Endorsement provides for no applicable deductible. Each party then moved for summary judgment. At the same time, the parties in the Underlying Lawsuits settled. Northland agreed to contribute its $1 million limit to settle the claims in the Underlying Lawsuit, and Liberty Mutual agreed to front the $1 million deductible on behalf of the insureds. The district court granted summary judgment in favor of the insureds, holding that the Deductible Endorsement was not enforceable as written. Therefore, the district court held that Liberty Mutual could not recoup the $1 million deductible that Liberty Mutual advanced and that the alternate arguments advanced by the insureds were moot. Liberty Mutual timely appealed.

---

[1] Big Binder also sued the Underlying Lawsuit plaintiffs but its claims against those individuals were dismissed with prejudice.

No. 20-60188
c/w No. 20-60263

## II.    Jurisdiction & Standard of Review

The district court had diversity jurisdiction under 28 U.S.C. § 1332. We have jurisdiction over the district court's final decision under 28 U.S.C. § 1291.[2]

We review de novo the interpretation of an insurance contract and a district court's rulings on cross motions for summary judgment. *Evanston Ins. Co. v. Mid-Continent Cas. Co.*, 909 F.3d 143, 146 (5th Cir. 2018). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

## III.    Discussion

The central issue on appeal is the proper interpretation of the Deductible Endorsement: namely, whether the Deductible Endorsement (which contains a blank after "Applicable Policies") applies to the Liberty Mutual Policy. Concluding that it does, we are then presented with alternate arguments for why Liberty Mutual is not entitled to recover the $1 million deductible from the insureds. Considering those alternate arguments, we hold that Liberty Mutual is not entitled to recoup the deductible from Big Binder but is entitled to recoup it from Darling.

In addressing these issues, we apply Texas substantive law of contract interpretation, which the parties agree governs this diversity action. Under Texas law, courts use ordinary rules of contract interpretation to construe insurance policies. *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257

---

[2] The only remaining issue before the district court in this case is Darling's claim for attorney's fees, but that issue does not prevent the merits judgment from becoming final for purposes of appeal. *Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Eng'rs & Participating Emps.*, 571 U.S. 177, 179 (2014).

(Tex. 2017) (per curiam). In doing so, courts "examine the entire agreement and seek to harmonize and give effect to all provisions so that none will be meaningless." *Id.* at 258 (quotation omitted). Therefore, "no one phrase, sentence, or section of a contract should be isolated from its setting and considered apart from the other provisions." *Id.* (internal brackets and quotation omitted). In other words, if a policy includes an endorsement, that "endorsement cannot be read apart from the main policy, and the added provisions will supersede the previous policy terms to the extent they are truly in conflict." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 558 (5th Cir. 2004) (internal quotation marks and citation omitted); *accord Mesa Operating Co. v. Cal. Union Ins. Co.*, 986 S.W.2d 749, 754 (Tex. App.—Dallas 1999, pet. denied).

All words and phrases are given their "ordinary and generally accepted meaning," unless the policy dictates otherwise. *Nassar*, 508 S.W.3d at 258 (internal quotation marks and citation omitted). If only one party's interpretation of the insurance policy is reasonable, then the policy is deemed unambiguous and that reasonable interpretation is adopted. *Id.* Accordingly, a policy is not ambiguous simply because the parties advance conflicting interpretations—the policy must "genuinely" be susceptible to "more than one meaning." *Id.* Only then is the policy ambiguous such that a court must adopt the interpretation that most favors the insured. *Id.* Applying these rules of contract interpretation, we address the merits.

## A.    Interpretation of the Deductible Endorsement

Liberty Mutual argues that, despite the blank after the "Applicable Policies" header in the Deductible Endorsement, the endorsement unambiguously applies to the Liberty Mutual Policy. We agree. The text of the Deductible Endorsement and the Liberty Mutual Policy unambiguously

establish that the Deductible Endorsement applies to the Liberty Mutual Policy.

When an insurance policy leaves a provision blank, Texas courts generally look to other parts of the policy to determine the provision's applicability. *See U.S. Fire Ins. Co. v. Scottsdale Ins. Co.*, 264 S.W.3d 160, 173 (Tex. App.—Dallas 2008, no pet.) (consulting a different page of an insurance policy to determine an endorsement's application where the endorsement form stated, "This endorsement modifies insurance provided under the following:" but left 'the following' blank); *Austin Road Co. v. Hous. Gen. Ins. Co.*, No. 05-91-00153-CV, 1992 WL 94595, at *4 (Tex. App.—Dallas May 7, 1992, writ denied) (not designated for publication) (referring to other parts of the insurance policy to determine the operations to which an endorsement applied, where the endorsement left blank the applicable operations section); *Woods v. Am. Nat'l Ins. Co.*, No. 01-11-00378-CV, 2012 WL 5295298, at *3 (Tex. App.—Houston [1st Dist.] Oct. 25, 2012, no pet.) (holding that the termination date of an insurance policy, which was left blank, could be determined from the policy's effective date and its term); *3109 Props, L.L.C. v. Truck Ins. Exch.*, No. 03-13-00350-CV, 2015 WL 3827580, at *2 (Tex. App.—Austin June 18, 2015, pet. denied) (holding that the "Location of Premises," left blank in an insurance policy, could nonetheless be determined from a separate page of the policy providing an address in the "Description of Premises").

Here, the Deductible Endorsement left the space following the "Applicable Policies" section blank. Even so, the endorsement includes the Liberty Mutual Policy's identifying number and issuer (at the top of the page), as well as the deductible amount and the coverage (the "BUSINESS AUTO COVERAGE FORM") that it modifies. The Business Auto Coverage Form states that bodily injury liability is limited to the amount listed in the Policy Declarations. In turn, the Policy Declarations (which

No. 20-60188
c/w No. 20-60263

include the same policy number identified in the Deductible Endorsement and state that it applies to the Business Auto Coverage Form) limit liability to $2 million. Taken altogether, the $1 million deductible in the Deductible Endorsement unambiguously modifies the $2 million liability limit of the Policy Declarations that applies to the Business Auto Coverage Form.

The insureds' position—that the Deductible Endorsement does not apply to the Liberty Mutual Policy—contravenes two of Texas's cardinal rules of insurance contract interpretation: that (1) "an endorsement cannot be read apart from the main policy," *Mesa Operating*, 986 S.W.2d at 754; and (2) policies should be interpreted to "give effect to all provisions so that none will be meaningless," *Nassar*, 508 S.W.3d at 258 (internal quotation marks and citation omitted). By refusing to look at anything besides the blank space in the Deductible Endorsement, the insureds ignore the first rule.[3] More significantly, the insureds' interpretation would render the entire Deductible Endorsement meaningless (disregarding the second rule) because the *only* thing that the Deductible Endorsement does is add a deductible. It is thus unreasonable for an insured that agreed to an endorsement to think that the

---

[3] Darling makes two arguments for why we should not consider other parts of the Deductible Endorsement. Both lack merit. First, Darling contends that the policy number at the top of the Deductible Endorsement is simply a "stamp[]" intended to confirm that the endorsement is part of the Liberty Mutual Policy. Even if that were true, Darling neglects the fact that the Deductible Endorsement states that it modifies the Business Auto Coverage Form, to which the Policy Declarations' auto liability limit applies. Second, Darling argues that the Deductible Endorsement's statements that "this endorsement changes the policy" and "modifies insurance" are state-law-required disclaimers that did not substantively change coverage. *See* TEX. INS. CODE ANN. § 2002.001. Texas case law holds to the contrary. *See, e.g.*, *Primrose Operating*, 382 F.3d at 558–59 (recognizing that an endorsement which provided that it "modifies insurance provided under the following: COMMERCIAL GENERAL LIABILITY COVERAGE FORM" modified that form of the policy); *RSUI Indem. Co. v. Lynd Co.*, 466 S.W.3d 113, 121–22 (Tex. 2015) (holding that an endorsement that included the required language changed the policy).

No. 20-60188
c/w No. 20-60263

endorsement has no effect; it begs the question of why an insurer would include an endorsement in the first place.

We hold that the Deductible Endorsement unambiguously applies to the Liberty Mutual Policy.[4]  Having addressed that issue, we turn to address the insureds' alternate arguments for why the endorsement does not apply to them.[5]

## B.    Alternate Arguments

Big Binder argues that the Deductible Endorsement cannot be enforced against Big Binder and Goodlin because they are merely "additional insureds."[6]  It contends that the reference to "You" in the Deductible Endorsement refers to the Named Insured (that is, Darling) and therefore cannot apply to any other party.  We agree.

The Deductible Endorsement imposes obligations on only "you," which is defined on the first page of the Business Auto Coverage Form: "the words 'you' and 'your' refer to the Named Insured shown in the Declarations."  The Policy Declarations, in turn, identify the Named Insured

---

[4] Because we hold in favor of Liberty Mutual's interpretation on the face of the Deductible Endorsement and Liberty Mutual Policy, we need not address whether it is appropriate to consider Liberty Mutual's proffered extrinsic evidence when interpreting the Deductible Endorsement.

[5] Although the district court held that the insureds' alternate arguments were moot and did not consider them, we may address the merits of these arguments in the first instance because the questions are purely legal and "the proper resolution is beyond any doubt." *Singleton v. Wulff*, 428 U.S. 106, 121 (1976); *see also Callejo v. Bancomer, S.A.*, 764 F.2d 1101, 1112 n.11 (5th Cir. 1985) (addressing an issue in the first instance when it was fully argued by both sides in district court and on appeal and its resolution did not depend on any disputed issue of fact).

[6] An "additional insured" is "a party protected under an insurance policy, but who is not named within the policy." *W. Indem. Ins. Co. v. Am. Physicians Ins. Exch.*, 950 S.W.2d 185, 188 (Tex. App.—Austin 1997, no writ).

9

as Darling.  Therefore, under Texas's rules of contract interpretation, "you" refers to only Darling.  *See Nassar*, 508 S.W.3d at 258 (stating that Texas's rules of contract interpretation give words in an insurance policy their "ordinary and generally accepted meaning," unless the policy dictates otherwise (internal quotation marks and citation omitted)); *Verhoev v. Progressive Cnty. Mut. Ins. Co.*, 300 S.W.3d 803, 809 (Tex. App.—Fort Worth 2009, no pet.) (noting that because an insurance policy defined "you" as "the 'named insured,'" "you" in the policy referred to either of the two individuals identified as "named insured" in the policy).  We thus hold that the Deductible Endorsement does not apply to Big Binder or Goodlin.[7]

That leaves only Darling subject to the Deductible Endorsement. Darling nonetheless argues that the Deductible Endorsement does not obligate it to pay the $1 million deductible that Liberty Mutual fronted in the settlement agreement because the deductible's application to "damages" excludes payments made under a settlement agreement.  In so arguing, Darling contends that "damages" refers only to the *judicial award* of money following a liability determination—a definition that would exclude settlement payments.  But Darling provides no support for its narrow definition.  Nor do we find any.  Black's Law Dictionary broadly defines "damages" as the "sum of money adjudged to be paid . . . as compensation" or to "which a person wronged is entitled to receive."  *Damages*, BLACK'S LAW DICTIONARY (11th ed. 2019).  Further, courts routinely describe settlements as including money for "damages."[8]  More importantly, the

---

[7] Because we hold in favor of Big Binder on this issue, we need not, and do not, address Big Binder's other alternate argument that Northland's payment of $1 million satisfied Liberty Mutual's deductible.

[8] *See, e.g.*, *Certain Underwriters at Lloyd's, London v. Oryx Energy Co.*, 203 F.3d 898, 901 (5th Cir. 2000) (per curiam) (resolving whether a settlement included punitive as well as compensatory damages); *Am. Guarantee & Liab. Ins. Co. v. U.S. Fire Ins. Co.*, 255 F.

Liberty Mutual Policy itself anticipates it will apply to settlement payments; it affirmatively states that Liberty Mutual "may . . . settle any claim or 'suit'" that "seek[s] damages for 'bodily injury' or 'property damage'" to which the Liberty Mutual Policy applies. Darling's argument that the Deductible Endorsement's application to "damages" excludes settlement payments thus lacks merit. We hold that Darling is obligated to pay the $1 million deductible that Liberty Mutual fronted in the settlement agreement.[9]

## IV.    Conclusion

We hold that the Deductible Endorsement unambiguously applies to the Liberty Mutual Policy. Although we hold that Big Binder and Goodlin—as added insureds—are not subject to the Deductible Endorsement and therefore not obligated to pay the $1 million deductible, we hold that Darling is obligated to pay it. Accordingly, we VACATE the district court's judgment and REMAND to enter a judgment consistent with this opinion.

---

Supp. 3d 677, 689–90 (S.D. Tex. 2017) (noting that a settlement included money for mold damages); *Ortiz v. Great S. Fire & Cas. Ins. Co.*, 597 S.W.2d 342, 344 (Tex. 1980) (acknowledging that a settlement agreement may compensate for damages).

[9] Because we hold that the settlement payment was one for "damages," we need not, and do not, address Darling's argument that the settlement payment was not one for a "loss" under the Deductible Endorsement.