February 12, 2025

**Supreme Court**

No. 2022-243-Appeal.
(KC 13-1128)

Manuel Andrews, Jr., et al.          :

v.                          :

James J. Lombardi, in his capacity as   :
Treasurer of the City of Providence,
Rhode Island.

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email: opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Manuel Andrews, Jr., et al.      :

               v.              :

James J. Lombardi, in his capacity as  :
  Treasurer of the City of Providence,
        Rhode Island.[1]

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Justice Goldberg, for the Court.** This appeal spotlights the mandate rule, which "provides that a lower court on remand must implement both the *letter and spirit* of the appellate court's mandate, and may not disregard the explicit directives of that court." *Sansone v. Morton Machine Works, Inc.*, 957 A.2d 386, 398 (R.I. 2008) (brackets omitted) (quoting *RICO Corp. v. Town of Exeter*, 836 A.2d 212, 218 (R.I. 2003)). Here, the plaintiffs return to this Court and submit that our

---

[1] Although the complaint named James J. Lombardi, in his capacity as Treasurer of the City of Providence, as defendant, we note that, during the pendency of this appeal, Shomari Husband was named Treasurer of the City of Providence. *See* Super. R. Civ. P. 25(d).

mandate in *Andrews v. Lombardi*, 233 A.3d 1027 (R.I. 2020) (*Andrews II*),[2] awarded them prospective health-care benefits, but left unaddressed the issue of retroactive reimbursement for out-of-pocket expenses, which they incurred to secure health-care benefits during the pendency of this case. The trial justice disagreed and concluded that granting retroactive relief would run afoul of our mandate in *Andrews II*, which stated: "The case shall be remanded to the Superior Court with instructions to enter judgment consistent with the 'specific provisions pertaining to the Medicare Ordinance' as set forth in the Final and Consent Judgment entered in PC 11-5853 and PC 12-3590 on April 12, 2013." *Andrews II*, 233 A.3d at 1040. We agree with the trial justice's cogent reasoning and, therefore, affirm the judgment of the Superior Court. Because this appeal emanates from *Andrews II*, we begin with the relevant facts culminating in that opinion.

**Background**

On July 19, 2011, the Providence City Council passed Chapter 2011-32, Ordinance No. 422 (the 2011 Medicare Ordinance). *See Andrews II*, 233 A.3d at 1030. The 2011 Medicare Ordinance states:

---

[2] This case and a related case previously came before the Court in *Andrews v. Lombardi*, 231 A.3d 1108 (R.I. 2020) (*Andrews I*), and *Andrews v. Lombardi*, 233 A.3d 1027 (R.I. 2020) (*Andrews II*). Following remands to the Superior Court, new appeals were brought in each underlying matter, which were then heard on the same day before this Court. Although there is minimal overlap in the content of the resulting opinions, we refer to the previous cases as *Andrews I* and *Andrews II* for purposes of clarity.

"Notwithstanding any other ordinance, collective bargaining agreement, or interest arbitration award:

"(1)   As a condition of receiving or continuing to receive retirement payments and health benefits, all retired individuals and spouses of retired individuals shall enroll in Medicare immediately upon eligibility.  Any health benefits provided by the city to Medicare-eligible individuals shall be secondary to the Medicare benefits.

"(2)   With the exception of Medicare supplement or gap coverage, the city shall not provide Medicare-eligible retirees or Medicare-eligible spouses of retirees with healthcare benefits.  The cost of said Medicare supplement or gap coverage shall be paid by the city and/or retiree as otherwise provided by ordinance or contract.

"(3)   Nothing contained in this section shall be construed to confer healthcare benefits on a retiree or retiree's spouse which are not otherwise provided by ordinance or contract." *Id.*

After the enactment of the 2011 Medicare Ordinance, the City of Providence (City) notified, *inter alia*, plaintiffs, that as of May 1, 2013, "the City would terminate City-paid health care coverage for those who were Medicare-eligible." *Andrews II*, 233 A.3d at 1030.  For those not yet Medicare-eligible, the City advised that it "would continue with the health care plans that were in place until such time that each individual became Medicare-eligible." *Id.*

In due course, the Providence Retired Police and Firefighter's Association (the Retiree Association), as well as several police and firefighter retirees, commenced a class-action lawsuit challenging the constitutionality of the 2011

- 3 -

Medicare Ordinance. *See Andrews II*, 233 A.3d at 1030.  On January 30, 2012, the trial justice granted the police and firefighter retirees' motion for a temporary restraining order and/or a preliminary injunction, thus enjoining the City from terminating health-care benefits and requiring these retirees to enroll in Medicare. *See id.*  As a result, we are advised, no retiree incurred out-of-pocket expenses for health-care coverage while the temporary restraining order and/or preliminary injunction was in effect.  Thereafter, the trial justice ordered the parties into mediation, which resulted in a settlement agreement. *See id.*

On May 22, 2012, the City executed a memorandum of understanding with, *inter alia*, the Retiree Association. *See Andrews II*, 233 A.3d at 1030.  Similar to the 2011 Medicare Ordinance, the settlement agreement required the police and firefighter retirees to enroll in Medicare upon eligibility. *See id.*  Unlike the 2011 Medicare Ordinance, however, the settlement agreement provided that "the City would pay for certain costs associated with Medicare coverage, including penalties incurred from late enrollment in various Medicare supplemental programs such as Parts B and D." *Id.*  All members of the putative class were afforded the opportunity to opt out from the settlement agreement.  After a fairness hearing, the trial justice declared that the proposed settlement agreement was fair and reasonable and, in April 2013, she entered a consent judgment memorializing the terms of the settlement agreement (the 2013 Final and Consent Judgment). *See id.* at 1030-31.

The 2013 Final and Consent Judgment extinguished the temporary restraining order and/or preliminary injunction issued on January 30, 2012.

In October 2013, the putative class members who opted out of the settlement agreement—plaintiffs—filed this action against defendant City, challenging, *inter alia*, the constitutionality of the 2011 Medicare Ordinance. *See Andrews II*, 233 A.3d at 1031. In relevant part, plaintiffs' amended complaint sought a declaratory judgment that the City breached its contractual obligations to each plaintiff by failing to provide health-care benefits; that the 2011 Medicare Ordinance was unconstitutional on its face and as applied because it violated the Contract Clauses, the Due Process Clauses, and the Takings Clauses of the United States and Rhode Island Constitutions; and that they were entitled to relief under a promissory estoppel theory. The plaintiffs also requested monetary damages under the breach-of-contract and the promissory estoppel theories but, importantly, the amended complaint did not request monetary damages for the purported constitutional violations. Additionally, plaintiffs sought a permanent injunction directing the City to provide the health-care benefits that had been allegedly wrongfully withheld, as well as prohibiting the City from terminating or suspending the health-care benefits to which plaintiffs alleged entitlement.

The City filed a motion for partial summary judgment, which the trial justice granted with respect to plaintiffs' claims under the Due Process and Takings Clauses

of the United States and Rhode Island Constitutions, as well as the claim for promissory estoppel. *See Andrews II*, 233 A.3d at 1031. In April 2016, a bench trial ensued on the remaining claims—*viz.*, breach of contract and violation of the Contract Clauses of the United States and Rhode Island Constitutions. *See id.* On February 2, 2017, the trial justice issued a written decision denying relief, and plaintiffs filed a timely appeal. *See id.* at 1032.

On appeal in *Andrews II*, we focused on the Contract Clause claims, and after carefully reviewing applicable constitutional principles and the parties' arguments, we declared ourselves

> "satisfied that two critical findings in the [trial justice's] Contract Clause analysis are constructed upon the faulty premise that plaintiffs who have retired were in fact receiving supplemental medical benefits under the hybrid plan. The two findings are that (1) the City did not impair its contractual obligation to plaintiffs covered by [the collective-bargaining agreements] or [the interest arbitration awards], and (2) the City presented sufficient credible evidence that no more moderate course was available to address the City's financial condition." *Andrews II*, 233 A.3d at 1038-39.

Despite these faulty findings, this Court discerned no error in the trial justice's "pronouncements that the 2011 Medicare Ordinance was passed for a significant and legitimate public purpose, that the City did not consider the change to retirees' health-care benefits on par with other policy alternatives, and that the change was

reasonable under the circumstances." *Andrews II*, 233 A.3d at 1039. Thus, we concluded:

> "[T]he controversy ought to be resolved by awarding the plaintiffs the same remedies for health care as provided in the 2011 lawsuit's settlement agreement approved in the 2013 Final and Consent Judgment. It is nothing more than what the City has agreed to provide for the opt-in retirees and indeed is contemplated in the 2011 Medicare Ordinance, which allows for the City's payment of 'Medicare supplement or gap coverage' when 'otherwise provided by ordinance or contract.'" *Id*.

Our mandate in *Andrews II* stated: "The case shall be remanded to the Superior Court with instructions to enter judgment consistent with the 'specific provisions pertaining to the Medicare Ordinance' as set forth in the Final and Consent Judgment entered in PC 11-5853 and PC 12-3590 on April 12, 2013." *Id*. at 1040.

After remand to the Superior Court, plaintiffs filed a document entitled "Memorandum in Support of Order Requiring Defendants to Pay Health Care Costs Incurred by Plaintiffs." Specifically, plaintiffs sought to recover the cost of the premiums paid to obtain supplemental and prescription coverage, the out-of-pocket health-care expenses incurred because of a lack of coverage, any qualifying penalties incurred as a result of late enrollment in Medicare Plan B, and statutory prejudgment interest.[3] In requesting such relief, plaintiffs suggested that an

---

[3] On appeal, plaintiffs expressly "contest only [the trial justice's] denial of reimbursement of the out-of-pocket expenses." We thus limit our review to this issue. It is our understanding that due to the temporary restraining order and/or

evidentiary hearing on remand would be necessary, and posited that in order to resolve "significant differences in the individual claims of the plaintiffs," a special master might be appointed "to hear each individual claim, make the necessary findings, and report to the [trial justice]." The City filed an objection.

The trial justice appropriately focused on our mandate in *Andrews II* and denied plaintiffs' requested relief. *See Andrews II*, 233 A.3d at 1040. In so doing, the trial justice concluded that "the narrow scope of the Supreme Court's mandate precludes additional evidentiary proceedings at this stage," and that she

> "cannot interpret the Supreme Court's mandate as having this retroactive effect. The more reasonable interpretation of the Supreme Court's decision to award 'the same remedies for health care' and direct the entry of 'judgment consistent with the specific provisions pertaining to the Medicare Ordinance as set forth in the Final and Consent Judgment' is that it was intended to identify the specific health care benefits that the City is now obligated to provide and give [p]laintiffs the means to enforce the City's obligation. * * * Upon entry of a new judgment 'consistent with' the provisions of the 2013 Final and Consent Judgment, [p]laintiffs will possess the 'same remedies for health care' as 'the opt-in retirees,' albeit under a different judgment with a different effective date."

preliminary injunction issued on January 30, 2012, no retiree—opt-in or opt-out—incurred any health-care coverage expenditures from the time the City adopted the 2011 Medicare Ordinance through the entry of the 2013 Final and Consent Judgment. Upon entry of the 2013 Final and Consent Judgment, the temporary restraining order and/or preliminary injunction issued on January 30, 2012, was dissolved and the City discontinued its payment for health-care coverage for the retirees who opted out of the settlement agreement, thus resulting in the opt-out retirees incurring out-of-pocket health-care expenditures.

- 8 -

Judgment entered, and this timely appeal ensued.

**Standard of Review**

On appeal, "we review *de novo* whether [the Superior Court] faithfully and accurately followed our mandate on remand." *Portsmouth Water and Fire District v. Rhode Island Public Utilities Commission*, 150 A.3d 596, 602-03 (R.I. 2016) (brackets omitted) (quoting *American States Insurance Co. v. Synod of the Russian Orthodox Church Outside of Russia*, 170 F. App'x 869, 872 (5th Cir. 2006)).

**Discussion**

This Court has previously summarized the mandate rule:

> "When a case has been once decided by this [C]ourt on appeal, and remanded to the Superior Court, whatever was before this [C]ourt, and disposed of by its decree, is considered as finally settled. The Superior Court is bound by the decree as the law of the case, and must carry it into execution according to the mandate. That court cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon any matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded. * * * But the Superior Court may consider and decide any matters left open by the mandate of this [C]ourt." *Pleasant Management, LLC v. Carrasco*, 960 A.2d 216, 223 (R.I. 2008) (brackets omitted) (quoting *United States v. Thrasher*, 483 F.3d 977, 981 (9th Cir. 2007)).

Consistent with the mandate rule, we have recognized that "the opinions of this Court speak forthrightly and not by suggestion or innuendo." *Pleasant Management, LLC*, 960 A.2d at 223 (quoting *Fracassa v. Doris*, 876 A.2d 506, 509

(R.I. 2005)).  As this Court has admonished, the role of a trial justice is not "to attempt to read 'between the lines' of our decisions." *Id.* (quoting *Fracassa*, 876 A.2d at 509).  Indeed, "[w]e have made 'clear that the lower courts and administrative bodies that receive our remand orders may not exceed the scope of the remand or open up the proceeding to legal issues beyond the remand.'" *Id.* (quoting *Willis v. Wall*, 941 A.2d 163, 166 (R.I. 2008)); *see also Hagopian v. Hagopian*, 960 A.2d 250, 253 (R.I. 2008) (stating that a lower court "has no power or authority to deviate from the mandate issued by an appellate court") (quoting *RICO Corp.*, 836 A.2d at 218); *Sansone*, 957 A.2d at 398 (observing that on remand a lower court "must implement both the letter and spirit of the appellate court's mandate, and may not disregard the explicit directives of [the appellate court]") (emphasis and brackets omitted) (quoting *RICO Corp.*, 836 A.2d at 218).

One application of the mandate rule occurred in *Sisto v. America Condominium Association, Inc.*, 140 A.3d 124 (R.I. 2016), in which a justice of the Superior Court granted the defendants' motion for partial summary judgment. *See Sisto*, 140 A.3d at 126.  On appeal, our mandate simply stated, in relevant part, "we affirm the judgment of the Superior Court * * * with respect to Sisto's standing to file the application for expansion with the [Coastal Resources Management Council], as well as with respect to the anti-SLAPP issue. * * * The papers may be

remanded to the Superior Court." *Id*. at 128 (quoting *Sisto v. America Condominium Association, Inc.*, 68 A.3d 603, 617 (R.I. 2013)).

On remand, the defendants filed an amended motion seeking an assessment of attorney's fees to recover expenses incurred during the appeal, which the Superior Court granted. *See Sisto*, 140 A.3d at 127. Sisto again appealed, and we noted a threshold question concerning "[w]hether the issue of attorney's fees was properly before the Superior Court * * *." *Id*. at 127-28. After reviewing the mandate rule, *see supra*, this Court concluded that "[t]he mandate [in *Sisto*] ma[de] no mention of attorney's fees in connection with that appeal because that issue was not before us" and "the fact that we did not explicitly mention attorney's fees in the mandate did not preclude the Superior Court from subsequently awarding defendants attorney's fees incurred in defending the judgment on appeal." *Id*. at 128 ("Because it was silent with regard to attorney's fees—which, we reiterate, are mandatory under [the anti-SLAPP statute]—our mandate left the determination of the proper award of fees to the Superior Court."). Accordingly, this Court determined that the Superior Court's award of attorney's fees upon remand did not transgress our mandate. *Id*.

In this case, we are not confronted with the type of post-judgment proceeding presented in *Sisto*, nor did our clear and concise mandate in *Andrews II* leave open the possibility of further evidentiary proceedings. Rather, our mandate was

forthright and narrow: "The case shall be remanded to the Superior Court *with instructions to enter judgment* consistent with the 'specific provisions pertaining to the Medicare Ordinance' as set forth in the Final and Consent Judgment entered in PC 11-5853 and PC 12-3590 on April 12, 2013." *Andrews II*, 233 A.3d at 1040 (emphasis added). Plainly, this mandate—"to enter judgment"—did not contemplate or leave open the prospect for an evidentiary proceeding, and the trial justice properly recognized that such "additional proceedings on those costs would be outside the scope of the Supreme Court's narrow mandate to enter judgment consistent with the specific provisions pertaining to the Medicare Ordinance as set forth in the Final and Consent Judgment * * *." (Internal quotation marks omitted.) *See, e.g.*, *Hagopian*, 960 A.2d at 253; *Willis*, 941 A.2d at 166.

Our mandate in *Andrews II* also referenced "the 'specific provisions pertaining to the Medicare Ordinance' as set forth in the Final and Consent Judgment entered in PC 11-5853 and PC 12-3590 on April 12, 2013." *Andrews II*, 233 A.3d at 1040. That language correlated with the 2013 Final and Consent Judgment, specifically the section entitled "Specific Provisions Pertaining to the Medicare Ordinance," i.e., paragraphs twelve through twenty-two. None of those paragraphs awarded the opt-in retirees damages or reimbursement for past expenses, nor was retroactive relief even contemplated since the opt-in retirees had no such expenditures. Although plaintiffs invoke principles of equity and maintain

- 12 -

that they are entitled to recover expenditures incurred after the dissolution of the temporary restraining order and/or preliminary injunction, the issue presented for our consideration is whether the mandate in *Andrews II* encompassed retroactive expenditures. We conclude that the mandate did not include or contemplate retroactive relief, but rather was prospective in nature, consistent with the agreement reached with the opt-in retirees, who did not incur health-care expenditures prior to the 2013 Final and Consent Judgment.

To be sure, plaintiffs maintain that our silence on the reimbursement question in *Andrews II* did not preclude the trial justice from subsequently awarding retroactive health-care costs. *See Sisto*, 140 A.3d at 128. We disagree. During trial, plaintiffs' counsel made clear that retirees were not seeking an award of individual damages. The trial justice responded, later recognizing, in relevant part, "[Y]ou've also told me that these figures are not going to the issue of individual damages because there's no claim for individual damages." Before this Court, plaintiffs seek to limit the scope of the waiver—claiming it did not apply to the Contract Clause claims; however, our review reveals no such limitation. In any event, the amended complaint did not seek damages or reimbursement under the Contract Clause claims; and despite the in-court waiver, plaintiffs nonetheless raised this issue during the appeal in *Andrews II*, requesting that this Court "requir[e] the City to reimburse [plaintiffs] for healthcare expenditures they were required to make to

secure the healthcare benefits of which they were wrongly deprived * * *." Further, it was disclosed at oral argument that plaintiffs produced no discovery concerning these damages.

In sum, the plaintiffs requested reimbursement for health-care expenditures during the appellate proceedings culminating in *Andrews II*, and we declined to award retroactive relief. Instead, this Court mandated that the Superior Court "enter judgment" consistent with the 2013 Final and Consent Judgment. The plaintiffs do not direct us to any pertinent provision of the 2013 Final and Consent Judgment that provided reimbursement for health-care expenditures, nor would one expect such a provision because the opt-in retirees incurred no out-of-pocket health-care-related expenses. Accordingly, the trial justice properly implemented our mandate, and we discern no error.

## Conclusion

For the reasons set forth herein, we affirm the judgment of the Superior Court. The record in this case is remanded to the Superior Court.

**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**

Licht Judicial Complex
250 Benefit Street
Providence, RI  02903



**OPINION COVER SHEET**

| | |
|---|---|
| **Title of Case** | Manuel Andrews, Jr., et al.  v.  James J. Lombardi, in his capacity as Treasurer of the City of Providence, Rhode Island. |
| **Case Number** | No. 2022-243-Appeal.<br>(KC 13-1128) |
| **Date Opinion Filed** | February 12, 2025 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Washington County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Sarah Taft-Carter |
| **Attorney(s) on Appeal** | For Plaintiffs:<br><br>Lauren E. Jones, Esq. |
| | For Defendant:<br><br>William M. Dolan, Esq. |